CHARLES LONG ET AL. v. H. F. MOORE ET AL.

Decided October 13, 1898.

**1. Deed—Absolute Grant in Fee—Words Not a Condition Subsequent.**

The declaration in an absolute warranty deed that the property is for the purpose of a female academy, without the use of any other words of limitation, as "only," or "for no other purpose whatever," does not constitute a condition subsequent, nor create a resulting trust in favor of the grantor or his heirs in the event the property is used for other purposes.

**2. Same—Evidence—Declarations of Stockholders.**

The declarations of stockholders, since deceased, of an unincorporated association as to the contents of a lost deed to the trustees of the association are not admissible in support of an attack upon the title of the association, where their interest is indefinite and is not shown.

**3. Same—Same—Declarations Admissible, When.**

In order for the declarations of stockholders, since deceased, in an unincorporated association as to the contents of a lost deed to the trustees to be admissible on the ground that they were against interest at the time, it must appear that such stockholders were familiar with the contents of the deed.

**4. Same—Evidence.**

No evidence that a lost deed to an unincorporated association for school purposes contained a clause restricting the use of the premises to such purposes and no other, is furnished by the minutes of the stockholders' meeting authorizing the trustees to lease or sell the property for school purposes and no other, and the

language of a lease of the property, that the lessees were "to have the full control, use, and enjoyment of said land for school purposes and none other, as the stockholders of said association now have and can give."

**5. Community Property—Heirs of Wife Divested of Title.**

The heirs of a wife can not dispute the effect of a conveyance by the husband, after her death, of community real property, where in the partition and distribution of the separate estate of the husband after his death, as well as of the community estate of himself and his deceased wife, more property was set apart to be divided among the heirs than that conveyed.

**6. Evidence—Lost Deed Declaration Against Interest—Stockholder.**

The declaration of a stockholder in an association that a lost deed made to it contained a clause for the reversion of the property when it ceased to be used for school purposes, is not admissible as a declaration against interest where it is made after he has parted with all his interest in the association.

APPEAL from Houston. Tried below before Hon. W. H. GILL.

*G. H. Gould, John I. Moore,* and *Madden & Lipscomb,* for appellants.

*Adams & Adams* and *D. A. Nunn, Jr.,* for appellees.

GARRETT, CHIEF JUSTICE.—This action was brought by appellants against H. F. Moore and others for the recovery of six acres of land known as the old Crockett Female Academy lot, situated about a half mile east of the town of Crockett, in the county of Houston.

The appellants, who were the plaintiffs below, were shown to be the heirs of John Long, deceased, and of his deceased wife, Elizabeth Long. The property in controversy belonged to the community estate of said John and Elizabeth Long. After the death of his wife Elizabeth, John Long conveyed the land to five trustees at the instance of an association of persons organized for the purpose of founding and maintaining a school in the town of Crockett. This association was composed of a large number of individuals who subscribed from $25 to $100 each to the enterprise. Long conveyed the land to the trustees for the recited consideration of $100, which was shown to be a subscription to the stock of the association. His deed to the trustees at the time of the trial below had been lost for a number of years, and its contents were sought to be shown by parol evidence.

From the evidence received, it was shown that the conveyance was an absolute warranty deed with the declaration that it was "for the purpose of a female academy." A schoolhouse was erected upon the lot, and it was occupied and used for a number of years for school purposes. In the year 1870 the association leased the building and lot to ten persons, for a term of years, by a written lease which declared that the use was for "school purposes and none other, as the stockholders of said academy now have and can give." Afterwards the property ceased to be used for school purposes, and in 1891 the association was dissolved and it abandoned all effort to maintain a school.

J. B. Smith, one of the defendants, showed transfers to himself of the interests of some five or six of the stockholders, and of fourteen other persons, executed since 1893 and during that year, transferring their interests in the property in controversy.

The right of appellants to recover the property will depend upon the proper construction of the deed of John Long to the school trustees. It is claimed that as the deed declared that the property was to be used for school purposes, on its ceasing to be used for such purposes it reverted to the appellants as the heirs of John Long, or rather that a resulting trust then arose in their favor. In support of this claim, the case of Hopkins v. Grimshaw, 165 U. S., 342, as well as other authorities, has been cited. In that case one Stephney Forrest conveyed land to three trustees for the Union Beneficial Society of Washington City, to have and to hold to said trustees "and their successors in office forever, for the sole use and benefit of the Union Beneficial Society of Washington as aforesaid, for a burial ground, and for no other purpose whatever." The use of the ground having been discontinued as a cemetery, and the bodies of those interred therein having been removed, and the association having dissolved, the heirs of Forrest brought a suit in equity to enforce a resulting trust for themselves in the property. The court held that the trustees named in the deed took the legal estate in fee, that the equitable estate in fee was from the beginning, and likewise remained in the grantor and his heirs; that the trust declared in the deed for a burial ground came to an end, according to its own express words and limitations, by the land ceasing to be used as a burial ground, and the dissolution of the society. It will be observed that the deed of John Long to the trustees for the Crockett school contains no limitations in terms whatever. There is a mere declaration of the purpose for which the land was conveyed, which was "for the purpose of a female academy" without the use of any other words of limitation as "only," or "for no other purpose whatever." A later case by the Supreme Court of the United States, Stewart v. Easton, 170 U. S., 383, construed the legal effect of a patent of land from the proprietaries of Pennsylvania to commissioners or trustees in trust for the town of Easton, in the county of Northampton, "for the erecting thereon a courthouse for the public use and service of said county, and to and for no other use, intent, or purpose whatsoever," to be to vest a fee simple title to the property in the trustees for the benefit of the county without any condition subsequent, and that the heirs of the proprietaries could not enter and retake the land upon its having ceased to be used for the purpose of the courthouse. A distinction to be observed between the two cases above referred to is, that the first was a suit in equity to have a resulting trust in the property declared, and the latter was a suit at law in ejectment for the breach of a condition subsequent by which it was claimed that the title to the property had been forfeited. In the case of Stewart v. Easton the opinion makes no reference to the case of Hopkins v. Grimshaw, and the court does not rest its decision

upon any distinction between the proceedings in law and equity as affect-. ing the rights of the parties. In the latter case, however, the construction of the patent was aided by the act of the General Assembly of Pennsylvania which provided for the erection of a courthouse and jail for the inhabitants of the county, and authorized persons named therein "to purchase and take assurance to them and their heirs of a piece of land situate in some convenient place in said town of Easton, in said county, and thereon to erect a courthouse and prison sufficient to accommodate the public service of the said county, and for the ease and convenience of the inhabitants," and it was said that a construction of the patent with the act of the assembly and the object to be obtained by the grant, repudiated any inference of an implied reverter. These cases are not perhaps inconsistent with each other. There is a distinction to be observed between the instrument out of which a resulting trust will arise, as when the use for which property was conveyed does not exhaust the entire estate, and from which a resulting trust arises in favor of the grantor, as in the case of assignment for creditors, or a clear limitation of the use of the property to a particular purpose by apt words, and those instruments in which a condition subsequent is expressly made, upon the happening of which the property will revert to the grantor, as where the grantor provides that the property shall revert upon its ceasing to be used for the purpose for which it was conveyed, or upon the breach of some condition, as where it is used for a prohibited purpose, but in no case can such conditions be readily implied. In the case of Olcott. v. Gabert, 86 Texas, 123, the Houston & Texas Central Railroad Company conveyed the lots in controversy to C. M. Dubois, bishop of Galveston, for the benefit of the Roman Catholic church. The habendum clause in the deed was as follows: "To have and to hold, all and singular, the premises above mentioned, unto the said C. M. Dubois, bishop of Galveston, for the use aforesaid, and to his successors and assigns forever." The church was built upon the lot but was afterwards abandoned, and the bishop conveyed the property to Olcott as the purchaser of the property of the Houston & Texas Central Railroad Company at a foreclosure sale. The plaintiff claimed the property under an execution sale under a judgment against the railroad company subsequent to the execution of the mortgage and foreclosure sale. The Supreme Court, in holding that the deed of the railroad company to Dubois vested an absolute title in fee in him for the use of the Roman Catholic church, treated the question as one of condition subsequent, and said: "There are no conditions subsequent expressed, and although they may be implied, they are not favored in law. It may be that the consideration expressed should be deemed nominal, and that the conveyance should be treated as voluntary, and it is true that a condition will be more readily implied in a deed of that character than in one which rests upon a valuable consideration. Yet the rule is well recognized that the mere declaration of the uses to which the granted premises are to be applied do not ordinarily import a condition. Where the declared purpose for which

the property shall be used is a matter that will inure to the special benefit of the grantor, the courts are more inclined to treat the conveyance as conditional, than when, as in this case, the use is for the benefit of a special class of persons, or of the public at large. In this case it does not appear that the maintenance of a church upon the lots was a matter specially advantageous to the railroad company who made the grant." See also Ryan v. Porter, 61 Texas, 106, and Farnham v. Thompson, 34 Minn., 331.

The consideration for which Long executed the deed was shown to be $100 of the stock of the association, or a subscription of that amount. He was interested in the school, but to what extent it does not appear. The evidence showed that the building was erected on the land and that there was at least $2500 worth of stock and many stockholders. The use for which the property was conveyed was for the benefit of the community at large, and there was no contemplation of its discontinuance, as a school might be maintained on the land as long as there were people in the community. In this respect the case is like that of Stewart v. Easton. The deed was shown to be an absolute warranty deed, with the mere declaration in the habendum clause that the property was for the purpose of a female academy, and it should be construed as a conveyance of a fee simple title, to the trustees named therein, for the benefit of the association. From this construction of the deed it results that the plaintiffs have shown no right to recover the property, and that the judgment of the court below should be affirmed, unless there was error in excluding evidence offered by the plaintiffs to show other terms of the deed, or unless plaintiffs should recover the community interest of Elizabeth Long in the land.

The plaintiffs offered to prove by two witnesses the declarations of deceased stockholders in the association that the deed contained in the granting clause "to be used for school purposes only," but on objection of the defendants the evidence of these persons was excluded. We are not prepared to say that the use of the word "only" would change the construction we have put upon the deed, but are of the opinion that the evidence was not admissible, since it was hearsay. It is true that the admission of a tenant in possession of land may be received in evidence against him when it is made against his interest, and there is a rule that declarations of persons, since deceased, made against interest, will be admitted as evidence against third parties. The persons whose declarations were sought to be shown were only stockholders in the association, and the extent of their interest was indefinite and was not shown. They were not the holders of the title which had been made to trustees for the benefit of an unincorporated association. Their admissions can not bind the association, or even if they could, not further than the extent to which they were interested, and the extent of their interest was not shown. To be admitted on the ground that what they said was against interest at the time, and that they are now dead, it should have been shown that

they were familiar with the contents of the deed, that they had either read it or had heard it read, or knew its terms from the grantor, which did not appear. 1 Whart. on Ev., sec. 140. It was sought to be shown by the witness Beckham, who was offered to prove the contents of the lost deed, that he had heard one McVey, who was a stockholder and member of the association, and was engaged at work at the time in building the original schoolhouse on the land in controversy, in a conversation with the grantor, John Long, in which the terms of the deed were discussed, say that the conveyance provided for the land to revert to the grantor or his heirs on ceasing to be used for school purposes, and insist on having the same changed in that respect, but that Long refused to do so. It was not shown that McVey was familiar with the terms of the deed, that he had read it, or knew its terms from the grantor. The evidence was properly excluded.

Under their tenth assignment of error the appellants complain of the refusal to give an instruction requested by them to the effect that a trust for John Long's heirs would result from a conveyance by him to the trustees for the benefit of the stockholders of a school association, if the deed recited that the land conveyed was to be used "for school purposes only," or "for school purposes and no other," upon the property ceasing to be used for school purposes and the dissolution of the organization of the original stockholders, as there was evidence to support the terms of the deed stated therein. The only evidence before the jury which can be claimed as tending to show such terms in the deed was that of the minutes of the stockholders' meeting authorizing the trustees to lease the property for school purposes and no other, and to sell the same for school purposes and no other, and the language of the lease executed for the property, that the lessees were "to have the full control, use, and enjoyment of said land for school purposes and none other, as the stockholders of said association now have and can give." We do not think this evidence tends to prove the terms of the deed as contended for by the plaintiffs, and there was no error in refusing the instruction.

The deed was executed by John Long after the death of his wife Elizabeth, but in the partition and distribution of the separate estate of John Long, as well as of the community estate of himself and his deceased wife, a great deal more property was set apart to be divided amongst the heirs than that conveyed by Long to the school trustees. Such being the case, the plaintiffs had been settled with for the community interest of Elizabeth Long, and can not be heard to dispute the effect of the deed. Brown v. Elmendorf, 87 Texas, 56.

One ground of the motion for a new trial was, that since the trial the plaintiffs had discovered evidence of one Corley, who was a stockholder and who said that the deed was in his possession, and stated that it contained the condition that the property should revert to the grantor or his heirs upon ceasing to be used for school purposes. To this there is a counter affidavit that at the time the declaration was said to have been

made, Corley had parted with whatever interest he had in the association, which would render his evidence inadmissible, if for no other reason.

For the reasons above given, we are of the opinion that the judgment of the court below should be affirmed.

*Affirmed.*

WILLIAMS, Associate Justice, did not sit in this case.

Writ of error refused.