## MON–TEX OIL CORPORATION et al. v. PO-TEET et ux. (No. 266.)*

Court of Civil Appeals of Texas. Eastland. Dec. 7, 1928.

Rehearing Denied Jan. 18, 1929.

Clay Cooke and Jack Rattikin, both of Fort Worth, and Jerome P. Kearby, of Comanche, for appellants.

Geo. E. Smith, of Comanche, for appellees.

FUNDERBURK, J. Of date May 21, 1918, Lee Poteet and wife executed and delivered to J. A. Fisher and C. W. Gilliland an oil and gas lease, reciting a consideration of $1 "and the release of an oil and gas lease executed in favor of Fisher and Gilliland"; also reciting as a part of the consideration "the covenants and agreements" contained in the lease "to be paid, kept and performed by the lessee." This lease purports to "grant, convey, demise, lease and let" a certain 80-acre tract of land described therein, "for the sole and only purpose of mining and operating for oil and gas and laying pipelines, and of building tanks, powers, stations and structures thereon to produce, save and take

*Writ of error granted.

care of said products." The term of the lease is stated to be "five years from this date and as long thereafter as oil or gas or either of them is produced from said land by the lessee." The obligations of the lessee, expressly stated to be considerations for the lease, are recited as follows: (1) To deliver, etc., the equal one-eighth part of the oil produced and saved from the leased premises. (2) To pay $100 each year in advance for the gas from gas wells, with the privilege of lessor at his own risk and expense to use gas free of cost for certain specified purposes. (3) To pay for gas produced from any oil well at the rate of $50.00 per year for the time during which such gas shall be used, payments to be made each 3 months in advance.

It is further provided: "If no well be commenced on said land on or before the 21st day of May, 1919, this lease shall terminate as to both parties," unless a certain sum of money be paid on or before that time, or deposited in a certain bank, but which, if paid or deposited, would "operate as a rental and cover the privilege of deferring the commencement of a well for twelve months." Provision is made for like extensions of time by the payment or deposit of rentals.

Another provision of the lease is for the commencement of a second well in case the first be a dry hole, within 12 months from the expiration of the last rental period for which rentals have been paid, with provision for termination upon failure to do so unless further rentals are paid.

Still other provisions not material, perhaps, to a consideration of the questions presented, are for abatement of royalties or rentals to correct a partial failure of title; provision for free use of gas, oil and water by lessee for operations on the lease, except water from wells of lessor, and other common stipulations, including the right of assignment by both parties.

The suit sought cancellation of said lease as against the original lessees Fisher and Gilliland, and also as against Mon-Tex Corporation; as to the latter, it being alleged that the other defendants had undertaken to make some disposition of the lease to it, but the character of such claim, if any, not being a matter of record. There was an alternate prayer not necessary to be noticed, since the judgment was for cancellation of the lease. Two or three grounds of cancellation were urged, the substance of which may be briefly stated as follows:

(1) The breach of an alleged implied covenant that lessee would, after the discovery of minerals covered by the lease, in good faith and with reasonable diligence, drill other wells on the land at such places and in such numbers as to fully explore the land and produce the minerals, yielding to lessors the royalties provided in the lease.

(2) The breach of an implied obligation of the lessee in good faith and with reasonable diligence to keep (producing) wells on said lease in good condition for producing oil or gas in uninterrupted flow.

(3) The pleading seems to be susceptible of the construction that it charges that the breach of the alleged implied covenant to reasonably develop, and the implied obligation to keep wells in condition for producing, constitute an abandonment of the lease. If this be not the proper construction, then the pleading asserts the termination of the lease on this, a third independent ground, namely, abandonment of the lease.

Judgment was for plaintiffs, canceling the lease, decreeing that all right, title, and interest evidenced by the lease be divested out of the defendants and vested in plaintiffs. Defendants have appealed.

The different questions, the substance of which is stated above, that are raised by the appeal are, we think, controlled by the same principles, and require the same disposition, and may for convenience be treated as one question, as follows: Is the remedy of cancellation available to a lessor in an oil and gas lease of the character described herein for a breach of implied obligations of the lessee to continue, with reasonable diligence, operations for the discovery and production of the minerals by the lessee?

The question is regarded as the same as that determined by the Commission of Appeals in W. T. Waggoner Estate v. Sigler Oil Co., 284 S. W. 921. That case is now pending in the Supreme Court, after rehearing granted. We have carefully examined the authorities upon which the Commission of Appeals rested its decision, and have unanimously reached the conclusion that the opinion in that case correctly interpreted and applied the decisions of the Supreme Court, bearing upon the question. A majority of the members of this court are, therefore, of opinion that the same authorities properly control the disposition of this case. The judgment of the trial court is, accordingly, affirmed.

The writer, while fully concurring in the view that the Commission of Appeals in the Waggoner Estate Case correctly interpreted and applied the decisions of the Supreme Court in Texas Co. v. Davis, 113 Tex. 321, 254 S. W. 304, 255 S. W. 601; Thomason v. Ham, 113 Tex. 239, 254 S. W. 316; Robinson v. Jacobs, 113 Tex. 231, 254 S. W. 309, and Munsey v. Marnet Oil & Gas Co., 113 Tex. 212, 254 S. W. 311, does not concur in the disposition made of this appeal. To my mind, the conclusions reached by the Commission of Appeals in the Waggoner Estate Case result so inevitably and logically from the above decisions of the Supreme Court that the granting of a rehearing and withdrawing the case from the Commission of Appeals, and retaining same for the consid-

eration of the Supreme Court itself, can only mean that that court has come to question the validity of its former decisions, and has reopened, at least for its own consideration, the questions involved in said decisions. It is because of this interpretation of the Supreme Court's action that the writer, with a feeling of no little diffidence, has concluded to state his personal views as to the disposition that should be made of the case at bar, just as though the questions that were involved in said decisions were now open. To whatever extent such statement may appear to be a criticism of said decisions, I sincerely trust that same will be regarded as same is certainly intended to be; namely, suggestions only made with proper deference to the opinions of a superior court and in the hope that same may be of some measure of helpfulness in the final solution of an extremely important and difficult question.

An ordinary oil and gas lease either does or does not vest in the lessee an interest in land. It may be regarded as settled in this state that the more common form of such leases, by due execution and delivery, vests in the lessee an estate in the land as such. Texas Co. v. Daugherty, 107 Tex. 229, 176 S. W. 717, L. R. A. 1917F, 989; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566. Undoubtedly the precise nature of the rights, interest, or estate evidenced by a lease is dependent upon the terms of the instrument. The instrument may evidence an option, license, easement, etc.,—not granting an interest in the land as such. It may be a conveyance of a fee-simple title to the minerals in place, or a base, qualified or determinable fee. Under the authority of the Mid-Kansas Case, the lease involved in this case, upon its execution and delivery, vested in the lessee a determinable fee in the oil and gas in the land. That being so, the law applicable to such estates is the law governing freehold estates of inheritance. A determinable fee is a freehold estate of inheritance. The law of such estates is of so ancient origin and of such universal application as to be comparatively easy to understand. The incidents of such estates are well known. What good reason exists why this court may not regard the estate in question as possessing such incidents and only such, and be governed by such principles and only such, as one where A conveys to B a tract of land to have and to hold so long as a spring of water thereon shall continue to flow? Or one where A conveys to B a tract of land to be used only for a specified purpose and to terminate if used for any other? The writer is wholly unable to perceive any such reason, and cannot avoid the conviction that an attempt to make a distinction would be judicial legislation, and an unwarranted usurpation of the legislative function.

If the "determinable fee" which an oil and gas lease vests in the lessee is to be regarded as possessing the usual incidents, then it is in no respects different from a fee-simple estate, except as respects its liability to termination upon the happening of the condition subsequent that renders it liable to forfeiture, or of the limitation that marks its end.

"The owner of a determinable fee has all the rights of an owner in fee simple, with the same rights of user and power to commit unlimited waste." Tiffany, Real Property, p. 336.

Says the same authority: "One to whom an estate on condition subsequent is given has an estate in the land which is liable to terminate on breach of the condition, but until such termination he has the same rights and powers in connection with the estate as if the condition did not exist, and it may be transferred by him or by operation of law, subject to be terminated, however, in the hands of the transferee." Id., p. 263.

In Corpus Juris it is said: "Until its determination such an estate has all the incidents of a fee simple, and while this estate continues, and until the qualification upon which it is limited is at an end, the grantee or proprietor has the same rights and privileges over his estate as if it was a fee simple. He has an absolute right to the exclusive possession, *use* (italics mine) and enjoyment of the land and as complete dominion over it for all purposes as though he held it in fee simple." 21 C. J. 923.

From this it logically follows that by far the greater part of those rules and principles of law governing freehold estates generally are applicable to the estate under consideration.

The estate evidenced by the lease under consideration is of that classification based upon quantity of interest or duration, known as a freehold estate of inheritance, and, as said before, is of the classification based upon quality of interest, known as a determinable fee. Stephens County v. Mid-Kansas Oil & Gas Co., supra; Lewis' Lectures on Real Estate, pp. 17–22; Id. 62–69.

If it be a determinable fee, then it is within one or more of the following subclasses: (1) Conditional at common law, estate tail; (2) on condition; (3) on limitation; (4) on conditional limitation.

It is not the first, because estates tail are in Texas abolished by the Constitution. Constitution, § 26, art. 1. There is no suggestion of the estate being one that upon conditions goes to a third party, and so the last is eliminated. It may then confidently be asserted that the estate with which we are dealing is one on condition or on limitation, or on both condition and limitation. As well known as are the meanings of these terms, it may nevertheless be not amiss to review some definitions, including that of a "covenant."

"A condition is a qualification annexed to the estate by the grantee whereby it may be created, enlarged or defeated upon an uncertain event." Lewis' Lectures on Real Estate, p. 62. The definition suggests a further subclassification, and this is found in "conditions precedent" and "conditions subsequent." "Conditions precedent are those which must be fulfilled before the estate to which they are attached can vest." Id. p. 63. Conditions subsequent are those upon the fulfillment or nonfulfillment of which an estate previously vested is defeated. Id. p. 63. Since there is premised a vested estate, conditions precedent are thereby ruled out of consideration.

A further classification of conditions is "express conditions" and "implied conditions." "An express condition is expressly set out in the instrument· of conveyance and is otherwise called a condition in deed; while an implied condition arises by implication of law and is generally annexed to certain estates as an invariable incident." Id. "A covenant is an agreement duly made between the parties to do or not to do a particular act." Id.

A fundamental distinction between a covenant and a condition subsequent is that, upon the happening of a condition, the grantor or his heirs have a right of re-entry, while upon the breach of a covenant there is no right of re-entry. · The only remedy is for damages.

"An estate on limitation is * * * one which is determined rather than defeated by the happening of a contingency." Id., 67. "The difference between an estate on limitation and one on condition subsequent is this: In case of limitation the estate absolutely ends upon the occurrence of the event to the happening of which it is limited; while, in estates upon condition subsequent the happening of the condition is cause for forfeiture and the grantor or his heirs may re-enter or sue to recover the property, or may waive the condition, as they see fit. Conditions cut short an existing estate. Limitations do not, but mark its natural end." Id. 67–68.

The words in a grant usually providing a condition are "on condition," "provided," "if it shall so happen," etc. Id., 63.

The words used· to create an estate on limitation all refer to time; for example: "until," "while," "during," "as long as," etc. Id., 67.

A familiar example of an express condition subsequent is: "If operations for the drilling of a well be not commenced on or before" a given date; "this lease shall terminate as to all parties."

A good example of a limitation is to be found, in the lease under consideration, as follows: "This lease shall remain in force (for a term of five years from this date) and as long thereafter as oil or gas or either of them is produced from said land by the lessee."

Before passing to a more detailed study of the terms of the lease itself, let us notice a few well-settled legal principles in the light of which the terms of the lease should be examined. One is that the recitation of an executed consideration may be varied by parol evidence. A recited consideration of $1 may be shown to be $10,000. From this it results that, unless an instrument expressly recites that a certain consideration is the sole consideration, no ·difference can ever be made in construing different instruments between one reciting a merely nominal consideration and another reciting a very substantial consideration. The application of this principle should prohibit any court from ever holding that an otherwise fee-simple estate is in fact to be construed as a determinable fee, based to any extent whatever on an assumption that the sole or main consideration for a lease is the advantage or benefits expected to accrue to the lessor from the exploration, discovery, or production of minerals, unless it be expressly so stated in the lease.

Another, that follows from. what has already been said relative to the applicability of most of the great body of rules and principles governing freehold estates, is that "ownership," as applied to a fee-simple title, means exactly the same as that term does when applied to a determinable fee title. In either case it means: " * * * Dominion of a thing real, *.* * corporeal or incorporeal" which one "has the right to enjoy and to do with as he pleases—either to spoil or destroy it as far as the law permits—unless he be prevented by some agreement or covenant which restrains his right." 29 Cyc. 1549. Can it be doubted that this includes the right to use or not use at perfect liberty the thing owned? How can this identity of the meaning of ownership as to the two kinds of estates be preserved, if it be held that a determinable fee estate is liable to extinguishment for mere nonuser; although a fee simple estate is wholly unaffected by non user? The obvious answer is that this can only be when an estate that has been granted is qualified by a condition subsequent or a limitation providing, in the case of the former, that the estate shall forfeit for nonuser, and, in the case of the latter, that the grant shall continue only while used.

Another highly important rule of law is that, if there be in a written instrument an express condition or express limitation, none other can be implied. "The expression in a contract of one or more things of a class implies the exclusion of all not expressed, although all would have been implied had none been expressed." 13 C. J. 537.

This rule applies even where the terms claimed to arise from implication are not inconsistent with those expressed. With much

greater reason, then, is it true that, if a thing is expressed, nothing will be implied that will have the effect of contradicting or limiting the meaning of the expressed term. A good statement of the rule would be: If any provision of a contract is expressed, any contrary implication is excluded.

Yet another important rule of law, applying to the qualifications that will make an otherwise fee-simple estate a determinable fee, is briefly stated in Corpus Juris as follows: "The qualification on which the estate is to determine must be found in the instrument creating the estate." 21 C. J. 923.

There may also be mentioned the elementary rule of construction that a written instrument will be so construed, if possible, to give some effect to each provision therein.

In the light of these principles, the legal effect of the lease, as the writer construes same, is that for a valuable consideration it conveys to the lessee title to the oil and gas in the 80-acre tract of land described. The obligation of the lessee to pay the specified royalties is conditioned upon the production and saving of the minerals. This obligation is just what the parties have denominated it; namely, a part of the consideration for the grant. It is a contingent obligation that becomes binding, and thereby imposes duties only if and when the minerals are produced. By express provisions of the lease, the obligation is of a twofold nature. It·is a part of the consideration for the grant, and is also a covenant.

The provision, that the grant is "for the sole and only purpose of mining and operating for oil and gas and laying pipelines, and of building tanks, power stations and structures thereon, to save and take care of said products," is but a grant of the oil and gas with the acknowledgment of an easement in the land 'to explore, produce, and market same. Without such provision the lessor could, perhaps, claim no interest in the land whatever. Even lessor's possessory right to the 'surface would be brought in question.

The provisions of the lease include two express conditions subsequent. They are: (1) "If no well be commenced on said land on or before the 21st day of May, 1919, this lease shall terminate as to both parties unless," etc.; (2) "should the first well drilled on the above described land be a dry hole, then and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid this lease shall terminate, unless," etc. In addition to these two express conditions subsequent there is also one express limitation. Such limitation is: "It is agreed that this lease shall remain in force (for a term of five years from this date and) as long thereafter as oil or gas or either of them is produced from said land by the lessee."

Since oil and gas were produced on the lease before any forfeiture occurred under either of the two conditions subsequent above mentioned, both of said conditions become immediately discharged. Thereafter the estate was held precisely as though they had never existed. It was held just the same as though it was a fee-simple title, the only difference being that it was liable to come to an end in accordance with the terms of the limitation. The tenure is just as absolute as a fee-simple title until the expiration of the 5-year period from the date of the lease. Thereafter, the continuance of the estate is wholly dependent upon the fact of continuing production.

The two conditions subsequent and the one limitation give character to the estate as a determinable fee. Either one of them, so long as operative, is sufficient to do so.

After the discharge of the conditions subsequent by the production of oil or gas, neither abandonment nor mere nonuser, nor cessation of operations, can affect the lessee's title to the estate. Just "so long as oil or gas or either of them is produced from said land by the lessee," there is no rule or principle of law applicable to fee-simple estates that is not likewise applicable to lessee's estate.

The above statement of the writer's construction of the lease may, for the time being, be regarded as only tentative or provisional. It may be freely conceded that, unless same can be supported by unanswerable logic and undoubted authority, it cannot stand, because of contrary decisions in this state.

By what authority and reasoning is this construction of the lease supportable? It is believed that the only authority necessary is comprehended in the definitions of terms and the statement of legal principles hereinbefore given. The result of applying those legal principles to the terms ·of the lease, it· seems to me, is to logically compel the above construction. Therein, if at all, consists the support of that interpretation by legal reasoning.

Let us first notice the matter of the consideration for the lease. Is the obligation to pay the specified royalties (a) a contingent consideration for the grant of the minerals, or (b) is it a covenant, or (c) does the expression of such obligation imply such duty of the lessee for the advantage of the lessor as (alone or in combination with other express provisions of the lease) to imply a condition subsequent? May it not safely be assumed that the obligation to pay royalties will certainly come within one or more of these classifications? Why is not such obligation just what the parties have in the lease denominated it—a part of the consideration, and also a covenant? Is there any legal obstacle to the parties stipulating that a part of the total consideration for the conveyance of land should be conditional or contingent?

What is more natural than that the parties should agree upon a certain consideration, and that a further consideration be paid upon the contingency that oil or gas be found? Can there be perceived any distinction whatever in such an agreement and one where a part of the consideration is paid in cash and another is to be paid out of the proceeds of oil that may be produced? Would not a stipulation of the first kind be even more natural than the latter, since the additional contingent consideration in such case would be proportioned to the amount of production, while in the other case the agreement would work to the advantage of one party and the corresponding disadvantage of the other, depending wholly upon the mere chance of whether production be much or little? That agreements in conveyances, providing for a part of. the consideration to be paid in oil, do not give rise to enforceable obligations unless and until oil is produced, is well supported by authority. Harris v. Wheeler (Tex. Com. App.) 267 S. W. 465; Cotherman v. Oriental Oil Co. (Tex. Civ. App.) 272 S. W. 616; Ferguson v. Mansfield, 114 Tex. 112, 263 S. W. 900; Ferris v. Huffman (Tex. Com. App.) 274 S. W. 125; Great Western Oil Co. v. Carpenter, 43 Tex. Civ. App. 229, 95 S. W. 57.

If such agreements do not become obligations unless and until oil is produced, then of logical necessity the status of such obligations are fixed as that of considerations rather than either covenants or conditions. So far as the present inquiry goes, it is not material whether such an obligation is a part of the consideration or a covenant, but it is material whether it is one or the other on the one hand, or a condition subsequent on the other. If the agreement to pay royalties is but a part of the consideration for the grant, the obligation that the agreement imposes does not arise until oil or gas is produced. Until the contingency happens which is to bring into existence the obligation, it would be illogical to say there was an implied duty resting on the lessee to bring about the contingency. There is simply no basis for such implication. When the obligation does arise, because of the production of oil or gas, a failure to perform same, by failure or refusal to pay royalties, would not result in a defeasance of the estate. If this be conceded, it is wholly inconsistent with any claim that the obligation to pay royalties even tends to imply a condition of defeasance. "A mere failure to pay royalties due under the lease will not give the lessor sufficient ground to declare a forfeiture, unless by the express terms of the lease he is given that right and power." 1 Thornton's Law of Oil and Gas, § 203, p. 587. This is but another way of saying that no condition subsequent can be implied from the obligations of the lessee to pay royalties, but, if such obligations are to constitute a condition subsequent, it can only be by express provisions of the lease. It will not be contended that there is any difference in these respects, whether the obligation to pay royalties be regarded simply as a part of the consideration, or as a covenant, or both. In either case no defeasance of a vested freehold estate will result from failure to perform. Chicago T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464.

By the terms of the lease, the lessee, "in consideration" of the premises (i. e., the grant), "covenants and agrees" to pay royalties. There is no reason why any executory consideration may not at the same time be also a covenant. The parties have here expressly so provided. This does not mean that the obligation to pay royalties without such express provision could properly be construed as both a part of the consideration and as a covenant, but, having provided that the obligation shall have this dual nature, and nothing else in the lease appearing to evince a contrary intention, the obligation is to be regarded as both a part of the consideration for the grant and a covenant annexed to same. May the same obligation be a condition subsequent? I do not hesitate to say that, if expressly made so by the provisions of the lease, such obligation would be a condition subsequent as well as a part of the consideration. In the absence of such provision, can it be a condition subsequent by implication? The status of the obligations as either or both considerations and covenants excludes any implication that it is also a condition; or, more accurately speaking, that any condition can be implied therefrom. The law looks differently on covenants and conditions. Covenants are favored. Conditions that may result in the defeasance of freehold estates, the next to the highest quality of estates known to the law, are looked upon with disfavor. In case of doubt, obligations that may be either will be construed as covenants and not conditions. Ry. Co. v. Titterington, supra; Grubb v. McAfee, supra.

What about a case where there is no doubt that a provision is a covenant? If it is certainly a covenant, then it just as certainly is not a condition, at least, in the absence of an express provision making it such. The status of the obligation as a consideration or covenant fixes the measure of the rights and remedies of the parties. What then could be more unreasonable than that the law will, from the same obligations, raise by implication radically different rights and remedies unfavored by law?

Aside from all that has been said to show that the obligation to pay royalties does not alone, nor in conjunction with other provisions of the lease, give rise by implication to a condition subsequent, such fact can be otherwise shown with all the certainty of a

mathematical demonstration. To do so it is only required to gain assent to the proposition that "the expression in a contract of one or more things of a class implies the exclusion of all not expressed, although all would have been implied had none been expressed." 13 C. J. 537. Certainly it may be assumed that there is no decision in this state which advisedly seeks to question that ancient and fundamental principle of the law of contracts. As has been pointed out above, the lease contains two definite well-expressed conditions subsequent. Under the law, therefore, none other can be implied. From this it results that the agreement to pay royalties, even if otherwise capable of raising by implication a condition to the grant, cannot be held to do so, because of the presence in the lease of the expressed conditions.

If then a condition subsequent is not to be implied in whole or in part from the obligation to pay royalties, what other provision in the lease may it be claimed affords a basis for such implication? Only one other, it is thought, need be noticed, which is the one providing that the grant of the land is "for the sole and only purpose of mining and operating for oil and gas and of laying pipelines and of building tanks, power stations and structures thereon to produce, save and take care of said products." It may be admitted that this provision calls for construction. What different things having any bearing on the present inquiry may it be construed to mean? Perhaps this, too, may best be arrived at by a process of elimination. We will say the provision is (a) merely descriptive of the purpose of the grant and in no wise affects the extent or duration thereof, or (b) it is a covenant against the use of the land for any purpose other than the one specified, or (c) it is intended to show that only oil and gas in the land is conveyed, with the acknowledgment of an easement to enable lessee to have full advantage of his ownership of the oil and gas, and to reserve to lessor his right of possession and other incidents of ownership of the interest in the land not conveyed, or (d) it implies a condition subsequent by which the estate will be subject to forfeiture if used for any other purpose than the one specified, or (e) it implies a limitation so that the estate will endure only so long as the property is used for the specified purpose.

Under one of the rules above stated, the provision should be given some effect, if possible, and, if given any effect, the first hypothesis will be discarded. I doubt if it is intended to provide a covenant against the use of the land for other purposes. Such, however, would be fully as reasonable, if not more so, than that by implication it raises a condition of defeasance. Every reason that could be offered to show that it was the latter would indicate with equal force that it

was a covenant. In such situation, the rule hereinbefore discussed would require that the provision be construed to be a covenant rather than a condition. Nor can I see in it any of the essential characteristics of a limitation. In fact, I question that there can be any such thing as an implied limitation on a freehold estate. But the final and conclusive answer, that the provision is neither a condition subsequent nor a limitation, is found in the fact hereinbefore pointed out that the expression in the lease of two conditions subsequent and of one limitation excludes any other conditions or limitations by implication.

While not material to the question in issue, I think that the most reasonable construction of this provision is that it evidences an intention, not to convey the entire interest in the land, but only the oil and gas, with an easement to drill, produce, save, and market same. Without the specification of the sole purpose of the grant, it is not certain that the lease would not have conveyed the entire tract of land. Without such provision the right of the lessor to retain possession of the surface would have been doubtful, and, if it existed, it would only be by inference or implication. On the other hand, if the grant had been in terms of the oil and gas in place, with or without the acknowledgment of an easement, there would have been no occasion to have specified a sole purpose of the grant.

I say that this would have been true without express acknowledgment of an easement, because the law would imply an easement of necessity from a conveyance of the oil and gas. A recognized authority, speaking of easements of necessity, says:

"If one conveys minerals beneath his lands, the grantee may be entitled, on the same theory of necessity, to privilege of building air shafts and water storage facilities, of erecting machinery in or on the grantor's land and of dumping waste thereon." 2 Tiffany on Real Property, p. 1296.

"And so a conveyance of minerals in the soil is ordinarily regarded as giving the privilege of passing over the grantor's land in order to extract the mineral and of constructing roads, tram and railway tracks to such extent as may be necessary for the purpose, and such a conveyance moreover, in order that it may be effective, ordinarily involves of necessity the privilege of sinking shafts through the surface of the land for the purpose of extracting the minerals." Id., p. 1300.

The fact that a necessary easement would be implied in no wise prevents one from being expressed. It seems to me the parties undertook to do this by granting in terms the whole tract and limiting the use so as thereby to leave the lessor in full possession and enjoyment of the part of the land not conveyed.

Before leaving this subject it should be remarked that, if there were no express conditions subsequent, and no express limitations

so as effectually to exclude the existence of any other conditions or limitations by implication, I am still of the opinion that the grant of the land for a sole purpose would not imply either a condition or limitation. "The fact," says an authority heretofore cited, "that a conveyance states the purpose for which it is made *or defines the use to which the land is to be applied* (italics mine) is not ordinarily regarded as creating a condition subsequent, subjecting the grantee's estate to defeasance in case the property is not used in accordance with such provision." 1 Tiffany, Real Property, page 272; Long v. Moore, 19 Tex. Civ. App. 363, 48 S. W. 43.

If ordinarily such is not the case, then when would it be? The answer immediately follows: "A different construction has, however, occasionally been adopted when the conveyance was purely voluntary, or the language was contained in a demise, *such a case being distinguished from that of a conveyance for a pecuniary consideration,* (italics mine) in which latter case an intention to create a condition in favor of the vendor is not to be anticipated." Id.

It thus appears that the specification of a sole purpose or use as implying a condition subsequent, if ever sufficient for such purpose, has application to an entirely different character of instruments than executed conveyances of freehold estates. In this same connection may I also observe that, if the specification of a sole purpose of the grant be not prevented by any of the reasons above discussed, from implying a condition subsequent, and, if it were, in fact, conceded to be such, even then forfeiture would never result from mere cessation of operations or nonuser. The grant being for a sole specified purpose, if there is to be implied a condition to use only for such purpose, no breach would occur until the lessee undertook to use the property for some other and different purpose. To hold that mere cessation of operations or nonuser would constitute the happening of the event upon which the grant was conditioned would be again to deny that ownership, as applied to a determinable fee, means the same thing as when applied to a fee-simple estate. The right to use or not use is alike common to both, unless restricted by some agreement or covenant, in which case the law of covenants, and not of conditions subsequent, will apply.

It will be noticed that the discussion has been extended far beyond the range of appellee's contentions. Appellee contends that the lease has forfeited or terminated because of the breach of (a) an implied covenant to reasonably develop the lease, (b) an implied covenant to keep wells in condition to produce, and (c) abandonment. It would have been sufficient to answer the first two contentions that a vested estate in land is never defeated by the failure to perform covenants, whether express or implied. If there be a de-

feasance it will of necessity be because the obligations denominated "implied covenants" are in fact not covenants at all, but conditions subsequent, or limitations. This was so recognized by Judge Speer in the Waggoner Estate Case, supra, and appellee's contentions have been so treated throughout this opinion.

What has been said, in principle, if not expressly, covers the claim that the lease had terminated by abandonment. In my opinion there is no such thing known to the law governing vested freehold estates as abandonment. In an early case it was pointed out what kind of estates could be lost by abandonment, as well as those that could not.

"Easements and incorporeal rights annexed to land, may be lost by abandonment. So may an incipient right to land, as a location and survey, or other merely equitable title, not perfected into a grant, or vested by deed. (4 Kent, Com. 448 [Hatch v. Dwight]; 17 Mass. 297 [9 Am. Dec. 145]; [French v. Braintree Mfg. Co.] 23 Pick. [Mass.] 216; [Phillips v. Shaffer] 5 Serg. & R. [Pa.] 215; 2 Hilliard on Real Property, 3, 12, 13, 79, 98.) Legal rights, when once vested, must be divested according to law, but equitable rights may be abandoned." Dikes v. Miller, 24 Tex. 417, 424.

This principle is clearly recognized in Judge Speer's opinion in the Waggoner Estate Case, supra, where full appreciation of the fact is manifest that the termination of the estate held to have occurred is not by abandonment in the ordinary sense of the word, but because of the cessation of the acts upon the continuation of which the existence of the estate is dependent. This distinction may be illustrated as follows: Suppose in the lease under consideration, instead of the limitation expressed and which has been before quoted, it had provided: "If oil or gas be found this lease shall remain in force as long as the lessee shall with reasonable diligence continue to develop said lease."

What would have been the effect of a cessation of development operations? The lease would come to an end, not because of abandonment, but according to, and by reason of, the express limitation. There is in the lease under consideration no express limitation of the estate to the time during which the lessee shall pursue development operations. There is no express obligation that he shall do so. There being an express limitation and express conditions, it would, I think, be doing violence to the most elementary notions of the nature of freehold estates should it be undertaken to imply others and thereupon declare the estate to be ended short of the limitation and independently of the happening of the conditions expressed.

Before closing, notwithstanding the regrettable length of this expression of my views, I feel I should briefly point out wherein it fails to conform to the decisions of our Supreme Court, hereinbefore mentioned. Nothing that

has been said, it is thought, is in conflict with any part of the opinion in the Mid-Kansas Case that was necessary to that decision. The question for decision was whether the nature of the rights, interests, or estates conveyed by the leases under consideration was an interest in land or not, within the meaning of the laws relating to taxation. It was determined that the interests conveyed were interests in land, and that the particular nature of the estate conveyed was a determinable fee. The decision on the real question involved is taken as the premise upon which the foregoing statement of my conclusions is based. The leases, an example of which is set out in the opinion, contained a definitely expressed limitation of the estate from which it was "obvious * * * that the grants might endure forever, since the lands might never cease the profitable production of oil or gas." Certainly there is no room for any difference of opinion that this limitation alone made of the estate a determinable fee. It was unnecessary to further say: "That it was intended by all parties that the lands should be used for no other purpose than the specified mineral exploration and production." It was likewise unnecessary to the validity of the decision further to say: "That the grants were to be enjoyed only while such use continued and were to immediately terminate on cessation of the use." The court did not mention, and there is no reason to think it considered, the distinction between express and implied provisions of the lease. Only by reading the lease does it appear that the intentions which the court found obvious, in the respects last mentioned, were not expressed in the lease, but merely implied.

In Texas Co. v. Davis, 113 Tex. 321, 254 S. W. 304, 255 S. W. 601, the question for decision was different. There the question was squarely presented as to whether or not the lease involved conveyed an estate of such nature that same would terminate because the "purpose," namely, "the mutually profitable production of oil, gas, or other valuable mineral, * * * was no longer prosecuted" by lessee. The decision seems to me, in principle, if not in fact, to involve the same question as the one before us. It is only on the theory that by granting a rehearing in the Waggoner Estate Case the court has reopened the Davis and other cases that I have hoped to be justified in expressing contrary views. Whether they be right or wrong, I feel sure there is no impropriety in expressing the opinion that it is due to the bench and bar of Texas to have a better statement of the law than has yet been given us, relative to the character of estates like the one under consideration. To illustrate: In Texas Co. v. Davis, supra, there was, at least, one condition subsequent and a limitation expressed in the instrument. Yet the court implies an obligation, which of necessity must be either a condition subsequent or

a limitation, since otherwise, a defeasance of the estate would not result; and thereupon, and because of such implied provision, declares a termination of the estate. Is it to be understood that our Supreme Court contemplated the logical consequence of this holding on that mudsill principle of contract law hereinbefore stated, and which may be otherwise stated in more concrete form: That the express mention of a condition subsequent or a limitation in a conveyance implies the exclusion of any other condition subsequent or limitation, although they would have been implied had none been expressed? By what reasoning could a proposition be sustained that this rule has no application to an oil and gas lease?

Again, in the Davis Case, the court reaffirms that the estate is a "determinable fee." The Mid-Kansas Case is cited for authority. In making the determination in the latter case the court said: "Corpus Juris mentions as a qualification of the fee rendering it determinable that 'which attaches itself to the use of the land so that the estate is held to be granted for that use and purpose only, and on the cessation of the use the estate expires.' 21 C. J. 922."

This statement was, at the time being, applied to provisions of the leases not expressed but merely implied. But in the same section of the authority quoted, and for the manifest purpose of making plain that the provisions that would have such effect must be expressed rather than merely implied, it is said: "The qualification on which the estate is to determine must be found in the instrument creating the estate." Id.

It is apparent that, if an oil and gas lease does not expressly provide, in effect, as a condition subsequent, that if operations shall cease the estate will terminate, or, as a limitation, that the grant is so long as operations shall be continued, for the court to hold that the estate may be terminated, because operations have ceased, is to deny that the owner of a determinable fee can use or not use his estate the same as the owner of a fee-simple estate.

Still further, let us suppose an estate is a determinable fee. It is made so because qualifications are attached to an otherwise fee-simple estate. The qualification consists of a condition subsequent as follows: "If oil be discovered on adjacent lands, lessee shall reasonably protect the leased premises from offset drainage, and upon failure to do so, this lease shall terminate"; and a limitation as follows: "This grant shall continue so long as oil is produced in the state of Texas." Without the condition or limitation the estate would be a fee simple. As such it could never be lost by abandonment. Being a determinable fee, and no oil ever having been produced on adjacent lands, will the estate be lost by abandonment, so long as oil is produced in

Texas? Would not an affirmative answer involve a contradiction of terms?

It seems to me, may I respectfully suggest, that, in decisions contemporaneously with and since the decision in the Mid-Kansas Case, there has been manifest a failure to appreciate that the law governing freehold estates is alone applicable to oil and gas leases, and not the law applicable to other rights and interests. We have been continuing to ascribe to oil and gas leases, incidents in the nature of infirmities, only applicable to instruments that did not convey interests in land as such. The result is confusion and multiplication of questions that will continue until we become finally committed to the proposition that such instruments constitute a conveyance of land and are controlled by the law applicable to such estates; or, on the other hand, that they do not convey an interest in land, and are, therefore, liable to abandonment, subject to implied conditions, etc., applicable to instruments that do not have the effect of vesting an interest in land. If a question of public policy seems involved in order to protect the public against improvident provisions in leases, it seems to me that this is properly within the jurisdiction of the legislative department and not the courts. The Legislature could decree that certain terms be read into all leases or certain others be void, as was found to be necessary in policies of insurance. I am profoundly convinced that there will never be any certainty to the law governing one of our most important industries, until the question, upon which I have herein expressed this my humble opinion, is settled upon some more fundamental principles than has yet been declared by our court of last resort.