## LOOMIS v. GULF OIL CORPORATION et al.

### No. 1860.

Court of Civil Appeals of Texas. Eastland.

Dec. 16, 1938.

Rehearing Denied Jan. 13, 1939.

Locke, Locke, Stroud & Randolph, of Dallas, for plaintiff in error.

Joe S. Brown and John Broughton, both of Houston, for defendants in error.

LESLIE, Chief Justice.

R. W. Loomis, as owner of the hereinafter described land, instituted this suit, August 15, 1936, against the Gulf Oil Corporation to cancel and remove from his title thereto the cloud cast thereon by reason of a mineral conveyance executed by a predecessor in title. The first count was in trespass to try title and the second alleged the mineral conveyance, the promised consideration, failure of same, the failure to begin development and abandonment of all rights under the conveyance.

The defendant answered by general denial, general demurrer and plea of not guilty. The trial without jury resulted in a judgment that plaintiff take nothing. The plaintiff appeals. There are no findings of fact or conclusions of law in the transcript. The parties will be referred to as in the trial court.

In the progress of the trial, three primary questions of law were raised: (1) Whether the mineral conveyance imposed a duty on the oil company to begin development within a reasonable time; (2) whether, in the elapsed 26 years, such reasonable time had expired, and (3) whether in consequence thereof the plaintiff was entitled to the relief sought.

Omitting some formal parts, the conveyance in question is to the tenor following:

"The State of Texas, County of Marion

"Know All Men by These Presents:

"That we, R. T. Buchanan and Mary A. Buchanan, wife of said R. T. Buchanan of the County of Marion, State of Texas, in consideration of the sum of $250.00 Dollars to us in hand paid, the receipt of which is hereby acknowledged, and the further consideration of the agreement on the part of vendee herein, that it, its successors and assigns will render and pay to the vendors, their successors and assigns, one equal one eighth of all the net proceeds realized from the sale of any of the minerals which may be found in or under the land herein-after described, and marketed by the grantee, its successors or assigns; and if said land is now under valid and binding mineral lease to any person or corporation other than grantee, that since this instrument is intended to and does pass all royalty reserved in such lease to the grantee herein, that such grantee, its successors and assigns will pay to the grantor or assigns one half of all such royalties grantee or assigns may be entitled to under such lease, have granted,

bargained, sold and conveyed, and do hereby grant and sell to the said J. M. Guffey Petroleum Co., a corporation all of the petroleum oil, gas, coal, sulphur, iron, lead and zinc, and all other minerals of any kind or character, whether solid, liquid or gaseous, in or under the following described tracts or parcels of land:

"Situated in Marion County, Texas, the same being all lands, parts of the Miles Reed headright survey owned by us and for more particular description of which reference is hereby made to the deed records of Marion County, Texas, it being hereby intended, that this instrument shall have the effect to sever all the minerals in or under the said land from the surface thereof, and to sell and convey all minerals, together with the free and complete right of ingress and egress to and from said land, to conduct any and all mining operations necessary or convenient to exploit for and produce and save said mineral, and to erect and maintain all necessary and appropriate derricks and buildings and machinery, to sink all necessary shafts from the surface, drill wells, lay pipe lines for the conduct of liquid or gaseous minerals, and to erect tanks and reservoirs for holding the same, and to the extent necessary to conduct mining operations the use of the surface of said land is granted. It is stipulated herein that no well shall be drilled or shaft sunk nearer than 300 feet of any dwelling now on said land, and that all pipe lines shall be buried when the same runs through cultivated land so as to interfere as little as may be with the cultivation of the surface.

"To have and to hold unto the said J. M. Guffey Petroleum Co., its successors and assigns, the said minerals and mineral rights forever, and we hereby bind ourselves to warrant and forever defend the title to said minerals herein sold and granted against all persons claiming or to claim the same under the law or equity.

"In testimony of all of which, in witness our hands this, 26th day of April, A.D. 1910.

       his
"R. T. Buchanan (X)
       mark
       her
"Mary A. Buchanan (X)
       mark

"J. M. Guffey Petroleum Co.

"by J. C. Straus, Agent."

By the first proposition it is insisted that since the consideration for the conveyance

was approximately "75¢ per acre and an obligation to pay ⅛ of the net proceeds of the minerals * * * produced from the land" and since the conveyance contained nothing affirmatively indicating that the oil company should have the right to defer indefinitely the commencement of mineral development (though specifying no time within which such development must occur), such conveyance does not entitle the oil company, or its assigns, to defer indefinitely the commencement of mineral development on the land. That in any event, the legal effect of the conveyance required that mineral development should be commenced within a reasonable time from the execution of the conveyance.

Second, that as applied to the instrument in question the principle of law embodied in the first proposition is applicable to a mineral conveyance, irrespective of its character or form as mineral lease or mineral deed. The other propositions are to the effect that more than a reasonable time in which to begin development has long since expired and the land owner is now entitled to the cancellation of the conveyance, etc.

The defendant counters with two propositions, the first, in substance, that for a consideration paid ($250) and agreement to pay ⅛ of the net proceeds from the sale of minerals, etc., the instrument had the effect to convey to the vendee, its successors and assigns an indefeasible legal title to the minerals underlying the land; and, second, that the grantee, its assigns, etc., having acquired such title could not be divested of its estate by non user or lose same on the theory that non user would amount to abandonment thereof.

We have carefully examined the provisions of the instrument of conveyance and the undisputed evidence adduced in connection therewith. The instrument was filed for record in Marion County May 9, 1910. Tax receipts, and evidence accounting for some destroyed by fire, show that the defendant has annually paid the taxes on the property thus acquired from 1910 up to and including the year 1936. By mesne conveyances the defendant has come into the ownership of the title and interest originally conveyed by Buchanans to the J. M. Guffey Petroleum Company.

No well for oil or gas has ever been drilled on the property and no oil, gas or other minerals have been produced from the same. No actual effort has been made to drill the property or produce the other minerals, if any. Prior to the filing of this suit, the defendant did "seismograph work" in and around the property for the purpose of determining the presence of minerals, if any, under this land. The result thereof is not shown. No fraud is charged in connection with the original transaction, nor is there any evidence that $250 was an inadequate consideration. In fact it was unknown then, and unknown now, that any minerals exist under the land.

At the date of the trial below, the nearest producing oil well to this property was "about 17 miles slightly northeast from said property." The "Lizzie Henderson well" about three miles "slightly northeast of the property" was drilled about eight months prior to the trial of this cause and produced oil for about one week and has produced none since. Other wells lie farther away to the north and east in what is known as the Rhodessa field.

The questions raised call for a construction of the above instrument. As we interpret the plaintiff's first contention, and stated somewhat differently, he insists that this instrument does not operate as a conveyance to the oil company and its assigns of the legal title to the minerals in the land, but is merely a grant to the company of the right to obtain the specified minerals and that there is in the nature and terms of the instrument an implied covenant on the part of the grantee, its successors and assigns, to explore for, discover, and develop the minerals within a reasonable time from the date of the instrument, and that since the evidence is undisputed that 26 years have passed and no steps have been taken to develop such minerals, the original grantee and its assigns have breached such implied covenant, thereby forfeiting all rights conferred upon them by the terms of said instrument.

■ We do not believe the record sustains these contentions. We are of the opinion that the terms of said instrument conveyed an indefeasible legal title to the minerals, if any, in and under the land therein described.

On principle and reason this interpretation of the instrument is believed to be correct: (1) The instrument contains all the essential elements of a valid deed of conveyance such as competent parties, proper subject matter, valuable consideration, apt words of conveyance, proper words of execution, etc. Art. 1292, R.S.1925. (2)

It conveys "all" said minerals without limitation or qualification. (3) Its language manifests an intention to convey the fee simple title to the minerals in and under the land. (4) The consideration of $250 recited in the instrument taken alone, or in connection with the whole consideration, is a valuable one. Lindsay v. Iron & Steel Co., Tex.Civ.App., 9 S.W.2d 287; Cockerell v. Griffith, Tex.Civ.App., 255 S.W. 490. (5) In the event of production, the grantor is to have none of the minerals, as such, but only "one equal ⅛ of all the net proceeds realized from the sale of any of the minerals." (6) It further provides "and if said land is now under valid and binding mineral lease to any person or corporation other than grantee, that since this instrument is intended to and does pass all royalty reserved in such lease to the grantee herein, that such grantee, its successors and assigns, will pay to the grantor or assigns one half of all such royalties grantees or assigns may be entitled to under such lease." (7) The grantee is "to have and to hold" the minerals "forever."

The intention of the parties to convey and purchase, respectively, an indefeasible legal title to the minerals is emphasized by the further stipulation in the instrument that it "should have the effect to sever all the minerals in and under said land from the surface thereof and to convey and sell all such minerals."

Obviously, the instrument contains no express limitations, conditions subsequent, or any character of provisions for forfeiture or reversion, having to any extent the effect of debasing the fee. The terms and provisions of this particular instrument permit no such elements to be implied. Properly construed, we think the instrument in effect negatives any such intention. The legal significance of such terms as limitations, conditions subsequent, etc., to be found in leases and other instruments of conveyance will not be discussed since the nature of the same has been thoroughly considered and well stated in such authorities as W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27; Mon-Tex Corp. v. Poteet, Tex.Civ.App., 13 S.W.2d 211; Id., 118 Tex. 546, 19 S.W.2d 32; Ralph v. Magnolia Pet. Co., Tex.Civ.App., 95 S.W.2d 222, writ ref.

It is perhaps unnecessary to point out specifically these characteristics of said conveyance or to make any general deductions or conclusions as to the legal effect thereof. This for the reason that aside from any such independent considerations at this time, we are of the opinion that the legal questions presented by the plaintiff have been litigated and answered by the opinion in Hynson v. Gulf Production Corp., Tex.Civ.App., 232 S.W. 873, in which a writ of error was refused. In that case, the instrument of conveyance involved and construed is, except as to parties, date (April 12, 1910), etc., identical in terms and conditions with the instrument involved in this litigation. The purport and spirit of that opinion rules the instant one. Supporting such conclusion, and in line with that authority we cite Lindsay v. Texas Iron & Steel Co. et al., Tex.Civ.App., 9 S.W.2d 287, writ ref.; Ralph et al. v. Magnolia Pet. Co., Tex.Civ.App., 95 S.W.2d 222, writ ref.; Feather v. Baird, 85 W.Va. 267, 102 S.E. 294; 40 C.J. p. 993, sec. 586; p. 972, sec. 558. These authorities and those cited in them present comprehensive discussions and application of the principles of law employed in the disposition of this appeal. Further restatement or attempt to elucidate them in this opinion would not be profitable.

Since we have held that the instrument manifests an intention to convey, and did convey, an indefeasible legal title to the minerals, it follows that we are of the opinion that there is no merit in the plaintiff's further contention that the rights acquired by the original grantee, its successors and assigns, had forfeited by reason of abandonment. No such question could arise. The owner of such estate may not be divested thereof merely by non user. This proposition is sustained by the following authorities: Hanrick v. Dodd, 62 Tex. 75; Allen v. West Lumber Co., Tex.Com.App., 244 S.W. 499; Taylor et al. v. Higgins Oil & Fuel Co., Tex.Civ.App., 2 S.W.2d 288; W. T. Waggoner Estate v. Sigler Oil Co., Tex.Com.App., 284 S.W. 921; East Tennessee Iron & Coal Co. v. Wiggin, 6 Cir., 68 F. 446; 1 Tex.Jur. 8.

The plaintiff is of the opinion and urges here that the controlling question in the instant case was decided in his favor in the opinion in the case of Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S.W.2d 1039, and that his first proposition is sustained by that authority. In connection with that contention our attention is directed to a consideration of such general authorities as Thornton on Oil & Gas (5th Ed.) sec. 223; Merrill, Covenants Implied in Oil & Gas Leases, p. 36 et seq.;

Implied Covenants in Oil & Gas Leases by Prof. Walker, 11 Texas Law Review, 399–408. It is further insisted by plaintiff that the doctrine of his first proposition is applicable to an instrument conveying minerals, irrespective of its character as a mineral lease or a deed, provided it contains nothing to indicate affirmatively a right on the part of the grantees to defer indefinitely the commencement of mineral development and that such is true notwithstanding no period of time is designated within which such development must begin. Under such propositions groups of leading authorities, discussing and applying principles of law applicable in the interpretation of different types of mineral leases and conveyances, are cited as supporting or sustaining plaintiff's contentions herein. Such authorities are Texas Co. v. Daugherty, 107 Tex. 226, 176 S.W. 717, L.R.A.1917F, 989; Stephens County v. Mid-Kansas O. & G. Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; Texas Co. v. Davis, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601; Grubb v. McAfee, 109 Tex. 527, 212 S.W. 464; Robinson v. Jacobs, 113 Tex. 231, 254 S.W. 309, and others not necessary to mention.

We find the discussion of these authorities (in plaintiff's brief) by able counsel to be both interesting and impressive, but after a careful consideration of them and the state of the authorities generally on the questions raised, we are left with the conviction that the instrument involved in the instant suit is so different in its nature from the instruments involved and construed in the authorities relied upon by plaintiff that said authorities are not necessarily helpful, or at least not controlling in the disposition of this appeal; and further being of the opinion as stated that the questions have already been adjudicated by the opinion in Hynson v. Gulf Prod. Corp., supra, and that the holding therein is supported by the cases above cited, and in connection with that authority, we are constrained to overrule all the contentions presented by plaintiff. In the light of the record and especially in view of the particular terms of the conveyance, we think the defendants' counter propositions are sound and should be sustained.

For the reasons assigned, the judgment of the trial court is affirmed.