## Hillary Ryan v. M. H. Porter.

(Case No. 1594.)

1. Trusts and Trustees.— A conveyance of land to trustees was made upon the following express trusts: "1. That they shall erect upon said premises a dwelling-house and fixtures for the use of married itinerant preachers of the Methodist Episcopal Church South, who may from time to time be stationed on the circuit which includes the premises. 2. That such trustees shall at all times permit such married itinerant preachers to occupy said premises during the term of their appointment. 3. That trustees shall be appointed in the manner provided in this deed. 4. That money for carrying out the trust, for which the trustees may become responsible, and

have been obliged to pay, may be raised by a mortgage on the premises, or by a sale of the premises if such debt is not paid within one year after notice to the preacher in charge of the circuit." *Held:*

(1) Art. 551, Revised Statutes, has reference to the quantity and not to the quality of the estate granted.

(2) Courts, either of law or equity, will adopt any reasonable construction consistent with the terms of an instrument that will defeat the springing of an implied condition subsequent, in a grant.

(3) The conveyance to the trustees was not made on a condition subsequent, a failure to comply with which would work a forfeiture of the land.

(4) The grantor divested himself of title to the property unconditionally, and vested the fee in the trustees for the benefit of the Methodist Church South, limiting the use of the property to the class of preachers named.

(5) If the particular property should be at any time no longer available for the purposes of the trust, a court of equity would have power to direct its sale, and the investment of the proceeds in such manner as to give effect to the general object of the trust.

(6) The power of sale conferred on trustees must be strictly pursued or no title will pass.

APPEAL from Burleson. Tried below before the Hon. I. B. McFarland.

January 13, 1880, appellee brought trespass to try title against appellant and Dock Sharp, to recover twenty acres of land adjacent to the town of Caldwell. He claimed title as follows:

1st. Conveyance from L. L. Chiles to W. J. Hill and six others as trustees, enumerating the following trusts:

(1) That they should erect on said premises a dwelling-house and fixtures for the use and occupancy of the married itinerant preachers of the Methodist Episcopal Church South, who may from time to time be stationed on the circuit which includes the premises.

(2) That said trustees shall at all times permit such married itinerant preachers to occupy said premises during the term of their appointment.

(3) That trustees shall be appointed in the manner provided in the deed.

(4) That money for carrying out the trust, for which the trustees may have become responsible and have been obliged to pay, may be raised by a mortgage on the premises, or by the sale of the premises if such debt is not paid within one year after notice to the preacher in charge of the circuit.

2d. Deed from Phillip B. Scott and others as trustees to appellee, dated December 10, 1879.

Appellant claimed the land by deed from Emily Chiles and R. A. Higgins, executors of L. L. Chiles, deceased, dated June 6, 1877, claiming that the deed to Hill and others was a grant upon an implied

condition subsequent which had not been complied with, and that therefore the estate had become forfeited, and vested in the estate of the grantor, who was then dead.

The trustees intervened, but asserted no right. Upon the trial the court rendered judgment for appellee for the land, etc., from which Ryan took this appeal.

The propositions discussed in the opinion are as follows:

1st. The deed under which Porter, the appellee, claimed title to the premises in controversy conveyed an estate upon condition, subject to be defeated by an abandonment of the premises for the purposes of the trust.

2d. The court erred in rendering judgment for the appellee, being plaintiff in the court below, against the defendant in possession, because it appeared from the agreed statement of the facts proven, that the pretended sale to him was collusively made in fraud of the trusts in the deed from Chiles to W. J. Hill and others.

*Sayles & Bassett,* for appellant, cited: 4 Kent's Com., 125–130; Hayden v. Inhabitants of Stoughton, 5 Pick., 528; Gray v. Blanchard, 8 Pick., 283; Austin v. Cambridgeport Parish, 21 Pick., 215; Guild v. Richards, 16 Gray, 309; Jackson v. Blanchard, 3 Cowen, 221; Police Jury v. Reeves, 18 Mart. (La.), 221; Pasch. Dig., 1373, 4621; McMullen v. Guest, 6 Tex., 275; Carder v. McDermett, 12 Tex., 552; Secrest v. Jones, 21 Tex., 121; Campbell v. Everts, 47 Tex., 102.

*Hume & Shepard,* for appellee, cited: Hart. Dig., art. 169; Pasch. Dig., art. 999; R. S., art. 551; Bell County v. Alexander, 22 Tex., 358; Guild v. Richards, 16 Gray, 309; Stanley v. Colt, 5 Wall., 119; Packard v. Ames, 16 Gray, 327–29; Perry on Trusts, § 744; Meade v. Ballard, 7 Wall., 290; Hadley v. Hopkins Academy, 14 Pick., 253; Sanderson v. White, 18 Pick., 233–34.

WATTS, J. COM. APP.— In the absence of constitutional provisions or statutory enactments the common law is the rule of decision in this state. And in construing written instruments the recognized canons of construction of the common law and chancery courts, when not abrogated or modified by statute, will be applied. There is no statute affecting the rules applied by the courts named to the construction of instruments, with a view to determine whether or not they are made upon implied conditions subsequent. Art. 551 of the Revised Statutes, cited by appellees, has reference to the quantity and not the quality of the estate granted.

Implied conditions subsequent in grants, devises, etc., are not the favorites either of the courts of law or equity, but are discouraged by both, as that doctrine is usually invoked for the purpose of securing a forfeiture of the estate. If the instrument will bear any reasonable construction that will defeat the springing of an implied condition subsequent, at law as in equity, that construction will be adopted. Estates upon implied conditions subsequent cannot be created by deed, except where the terms of the grant will not admit of any other reasonable construction. 2 Washb. on Real Prop., 4.

Chief Justice Bigelow observed, in Rawson v. Inhabitants, etc., of Uxbridge, 7 Allen, 127, "It is said in Shep. Touchstone, 126, that 'to every good condition is required an external form,' that is, it must be expressed in apt and sufficient words, which according to the rules of law make a condition; otherwise it must fail of effect. This is especially the rule applicable to the construction of grants. A deed will not be construed to create an estate on condition, unless language is used, which, according to the rules of law, *ex proprio vigore*, imports a condition, or the intention of the grantor to make a conditional estate is otherwise clearly and unequivocally indicated. Conditions subsequent are not favored in law."

There is no condition subsequent expressed in the deed from Chiles to the trustees, etc.; nor does the grantor therein use any of the apt words or forms of expression that are considered in law as implying a condition subsequent; and there is no clause of nullity, or any declaration to the effect that the deed is to be considered void for the failure of the trustees or others to do, or not to do, any particular act.

The declared object is, that the property is to be used for a specific purpose; by the grant Chiles intended to accomplish that particular purpose. Those upon whom the benefit was intended to be conferred, as a class, are worthy of his generosity. Itinerant Methodist ministers, devoting, as they do, all their time and talents to the good of humanity, often regardless of physical comforts, and deprived of the pleasures of an established home, were intended to be benefited by the grant. The deed contains the following provision: "In trust that they shall erect on the said lot a dwelling-house and fixtures for the use and occupancy of the married itinerant preachers of the Methodist Episcopal Church South, who may from time to time be stationed on the Nashville circuit or that circuit or station which shall include said premises."

It is here claimed that, as the grantor directed the property to be used in a particular way, and for the purpose named, and impliedly

it was to be used for no other purpose or in any other mode than that specified, therefore a condition subsequent must be implied, to the effect, should the property ever cease to be used for the purpose mentioned, that it would then revert to the grantor or his representatives. Certain authorities are cited as sustaining that proposition. Of the adjudicated cases, most nearly in point and tending to that conclusion is Hunt v. Beeson, 18 Ind., 381. There, Hunt laid out a town upon his own land, and caused the plat to be recorded. The lot about which the controversy arose was thus marked upon the plat: "James Pugh's tan-yard lot." In the notes explanatory of the plat, and forming part of it, was the following statement: "Lot No. 4, in square No. 1, is donated by Miles Hunt, Jr., to James Pugh, for the purpose of erecting a tan-yard on it." Under the statutes of that state, this was held to be a grant to Pugh of the lot named. The statute provided "that every donation or grant to the public, or any individual, etc., marked or noted as such on the plat of the town, shall be considered to all intents and purposes a general warranty to the said donee or donees, grantee or grantees, for his, her or their use, for the purposes intended by the donor," etc. And Pugh, having accepted the donation, it was also held that it operated as a grant to the latter of the lot in question, with a condition subsequent implied, and that he had a reasonable time in which to comply with that condition. And the use of the lot as a tan-yard for twenty-four years was a reasonable compliance with the condition.

The case of Hayden v. Inhabitants of Stoughton, 5 Pick., 528, cited by the court in Hunt v. Beeson, and also by counsel for appellant in this case, was where there was a devise in Drake's will as follows: "I give to the town of Stoughton my lot of land in said town, etc.; also, twenty-five acres of wood-land in said town, which I have bargained for of Elijah Belcher; and in failure of receiving a deed of said Belcher for said land, I give to said town $300. Both of the above pieces of land (or money instead of the last piece), I give to said town for the purpose of building a school-house for the use of a free grammar school (or other school, as said town may direct); *provided*, said school-house is built by said town within one hundred rods of the place where the meeting-house now stands."

The devise was properly accepted by a vote of the town council. Possession was taken in 1817 by the town, but no school-house had been erected as required by the will. It was held that this was a devise upon a condition subsequent. That the estate vested accord-

ingly in the devisees.   But.that it was forfeited by not complying with the condition within a reasonable time.

In that case the will contained the apt word, "provided," and besides, there is a marked distinction between the construction of wills and deeds with respect to conditions subsequent.   In the former, such conditions will be implied from language which would not have that effect if used in the latter.   2 Washb. on Real Prop., p. 4.

In each of the several cases cited in the brief and argument of the distinguished counsel for appellant as supporting the proposition, an examination will attest that the *conditions* are expressed in the instrument.

The same is true of the case of Mead v. Ballard, 7 Wall., 290.   In fact, so far as we have been able to make an examination of the authorities, it seems that Hunt v. Beeson is unsupported.   The court there assumes the proposition, and advances no reasons in support of it.

In the case of Stanley v. Colt, 5 Wall., 163, the question arose on a devise to an ecclesiastical society for charitable purposes.   The devise was made to trustees, and provisions were made for filling vacancies in the board of trustees, and it contained this provision: "Provided, that said real estate be not ever hereafter sold or disposed of, but the same be leased or let, and the annual rents or profits thereof applied to the use and benefit of said society; and the letting, leasing and managing of said estate to be under the management and direction of certain trustees hereafter named by me, and their successors, to be appointed in manner as hereafter directed."

After managing the property for about fifty years as provided in the will, the society applied to the legislature of the state for authority to sell the same and to reinvest the proceeds, which authority was given, and the land was sold.   Thereupon the heirs of the testator brought suit, claiming that the devise was upon conditions subsequent, and that the estate was forfeited by the attempted sale. But the court held that there was no condition subsequent, but that it was a devise in fee upon trusts, the limitations being in the nature of directions to the trustees as to the management of the property.

It was there said that the court would look to the entire instrument, and from all of its terms arrive at the intention of the testator, and approvingly quoted from Sugden on Powers as follows: "That what, by the old law, was deemed a devise upon condition would now, perhaps, in almost every case, be construed a devise in fee upon trust; and by this construction, instead of the heir taking ad-

vantage of the condition broken, the *cestui que trust* can compel an observance of the trust by a suit in equity."

In Rawson *v.* Inhabitants, etc., in Uxbridge, *supra*, the court observes: "We believe there is no authoritative sanction for the doctrine that a deed is to be construed as a grant on a condition subsequent solely for the reason that it contains a clause declaring the purpose for which it is intended the granted premises shall be used, when such purpose will not inure specially to the benefit of the grantor and his assigns, etc. If it be asked whether the law will give any force to the words in a deed which declare that the grant is made for a specific purpose or to accomplish a particular object, the answer is, they may, if properly expressed, create a confidence or trust, or amount to a covenant or agreement on the part of the grantee."

From these settled principles the deed of Chiles cannot be construed as a grant upon conditions subsequent, a failure to comply with which would work a forfeiture of the land.

From an examination of the entire instrument, we think it apparent that Chiles intended thereby to divest himself of the title to the property unconditionally, and vest the fee in the trustees for the benefit of the Methodist church, limiting its use to the occupancy of the itinerant Methodist preachers appointed to that circuit. These limitations, instead of being implied conditions subsequent, are directions in fact to the trustees as to the management of the property. Neither the grantor nor his heirs are to receive any special benefit from a proper execution of the trust. And besides, at the time of the conveyance the property was valued at only about $20. While Chiles, by the terms of his deed, limits, at least impliedly, the use of the property, there is nothing contained in the instrument that indicates any intention on his part, regardless of changes that might take place in the town or community, or in the locality of the property and its surroundings, as well as the conveniences and necessities of the church and ministers in charge, that the property must forever be used in that way. Undoubtedly his intention was to secure a comfortable home to the ministers assigned to that circuit while they were there stationed. That being the intention as far as expressed, whenever, upon proper application, it is made to appear that the particular property is no longer available for that purpose, a court of equity would direct its sale and the investment of the proceeds so as to secure the object intended to be accomplished by the grantor.

The grantor or his heirs would, perhaps, have such interest in the matter that they might, by suit in equity, compel a proper execution

of the trust. And undoubtedly if the changed condition of the town, or the proper location of the church, etc., should render the land unfitted for the purposes intended, the trustees might apply to the equitable powers of the court, and upon a proper showing authority would be granted to sell the same and invest the proceeds for the purposes intended by the deed. It would seem, also, that those who were intended to be benefited by the grant would have sufficient interest in the matter to authorize proceedings by them to prevent a diversion or loss of the fund.

In actions of trespass to try title the doctrine is well established that the plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of that of his adversary. The pretended claim which was sought to be made the basis of the sale by the trustees had been barred by limitation for more than twenty years at the time of that sale. Besides, that character of notice required by the deed had not been given to the preacher in charge. Assume that he was aware of the fact that twenty-four years previously Scott had incurred an expenditure of $35 on account of the trust property, that would not be equivalent to notice to the preacher that the amount was owing and he desired payment of the same.

It appears that Scott in fact did not consider that it was a debt against the property, and it was only resorted to as a pretense from which to derive authority for making the sale to appellee. For aught that appears the amount may have been secured to Scott by the use of the premises for the six months he occupied the same. Without something indicating the contrary it would not be presumed that he had paid the rent to himself and the other trustees without first reimbursing himself for the expenditures he had made on account of the property. The rule is elementary that the power of sale conferred upon trustees must be strictly pursued, otherwise no title will pass. There was no foundation for the sale by the trustees; and besides, they did not comply with the terms of the deed in making the sale. Therefore it follows that the appellee Porter did not secure any title to the property by reason of his pretended purchase.

Our conclusion is that the judgment ought to be reversed and the case dismissed without prejudice to the rights of the parties, and especially without prejudice to the *cestui que trust* and those intended to be benefited by the deed.

REVERSED AND DISMISSED.

[Opinion adopted February 8, 1884.]