**GREDIG et al. v. STERLING et al.**

No. 5845.

Circuit Court of Appeals, Fifth Circuit.
March 18, 1931.

Rehearing Denied April 18, 1931.

Kirby Fitzpatrick, of Houston, Tex., James A. Reed, of Kansas City, Mo., and John J. Sargent, of Houston, Tex., for appellants.

Jno. G. Logue, Champ Ross, Chas. B. Wood, and Sam Neathery, all of Houston, Tex. (Ross, Wood, Lawler & Wood, Andrews, Streetman, Logue & Mobley, and J. W. Lockett, all of Houston, Tex., on the brief), for appellees.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

BRYAN, Circuit Judge.

Appellants, as heirs at law of George H. Hermann, filed a bill in equity to forfeit two certain devises and bequests in trust contained in Hermann's will, one of property to trustees for the establishment and maintenance of a public charity hospital, and the other to the city of Houston for a public park. The bill prayed that appellants be decreed to be the equitable owners of the property so devised and bequeathed, that appellees, the hospital trustees and the city, be compelled to convey to them the legal title which it was alleged they and it held originally in trust for hospital and park purposes, respectively, and for an accounting by the trustees, as such, and individually as well.

The ninth paragraph of Hermann's will reads as follows:

"I will and bequeath to T. J. Ewing, Jr., J. J. Settegast, Jr., and John S. Stewart in trust to be held, managed and operated by them as Trustees together with four other trustees they are hereby authorized to appoint and act and co-operate with them for the purpose of maintaining a public charity hospital in the city of Houston, Harris County, Texas, for the benefit of the poor, indigent and infirm residents of the City of Houston all of Block One Hundred Fifty-two (152) owned by me on the South Side of Buffalo Bayou in said City and Lot One (1) of the Hathaway Addition adjoining the same and I authorize my executors and trustees to purchase Lot Number One (1) in said Block One Hundred Fifty-two (152) and Lots three (3), five (5) and seven (7) in the Hathaway Addition or any portion thereof, if in their

---

judgment the price is reasonable to be held and used by them in trust with the other property devised herein for the purpose of a hospital to be erected thereon to be known as the "Hermann Hospital," I also bequeath to said Trustees named above and their successors the sum of One Hundred Thousand ($100,000.00) Dollars to be used by them for the purpose of erecting suitable building on said lots for said hospital, and I further will and bequeath unto the aforesaid Trustees in trust as above stated all of the remainder of my property real, personal and mixed wherever located or situated in the United States of America that is not otherwise disposed of by any codicil hereafter made by me, the said Trustees are authorized and directed to keep the principal derived from such property well and securely invested, either in real property or in notes, bonds, or other good securities and to use the rentals, revenue and income therefrom solely for the maintenance, support, sustaining and operation of said hospital.

"It is my Will and I so instruct my Trustees, that the indigent, sick and infirm of the city of Houston shall be taken care of in said hospital in preference to any others, but if there is at any time sufficient accommodation for others then that the indigent, sick and infirm of Harris County, shall be accommodated in said hospital. * * * I fully authorize said Trustees to formulate their own rules and regulations to govern them in the transaction of their business and also the mode of filling vacancies that may arise on said Board as well as the rules and regulations in the management of said Hospital, and it is my wish and pleasure that the indigent, poor, infirm and sick shall receive full benefit of the devise and bequest named in this paragraph. It is my desire that the Trustees act in the capacity named in this paragraph without compensation for their personal service, they having full power to employ such clerical assistance at a reasonable compensation as may be necessary in conducting the same, having from personal experience and observation become acquainted with the suffering and deprivation of the unfortunate, indigent, infirm and sick, and having great sympathy for them I desire that they shall receive the full benefit from the devise mentioned in this paragraph."

Hermann bequeathed to the city of Houston, by the seventh paragraph of his will, city block 146 for use as a public park, to be known as "Hermann Square"; and by the eighth paragraph several hundred acres to be known as the "George Hermann Park." By the tenth paragraph he provided that any part of the property devised by the seventh and eighth paragraphs which the city should decline to accept, or, having accepted, should fail to maintain exclusively for public park purposes, "shall revert to my estate and I now will it" to the hospital trustees in trust for the benefit of the hospital, "under the same terms, provisions and restrictions" set forth in the ninth paragraph. The tenth paragraph concludes as follows:

"And should for any unforeseen cause the Trustees should fail to establish, maintain and operate the Hermann Hospital as provided for in Paragraph Nine and should said Trust named in said Paragraph Nine fail from any cause and the property so devised and bequeathed to said Trustees should from any cause not be used for the purpose of maintaining and operating the Hermann Hospital for the indigent, sick and infirm residents of the City of Houston in Harris County, Texas, as provided for in the Ninth Paragraph and said devises and bequests should lapse then in such event I will and bequeath all of the property bequeathed to said Trustees in Paragraph nine or that would have gone to said Trustees for the purposes named in said Paragraph Nine or any other provisions of my Will, to my relatives who reside in Switzerland who are more particularly set forth and described in the Fourteenth Paragraph of this Will."

The testator appointed three executors, identical with the three hospital trustees named in the ninth paragraph, who were authorized to hold for ten years, or, at their discretion during that period, to sell any part or all of his property, except the real estate devised for hospital or park purposes. He expressed the wish that "my executors and trustees shall not be required to give any bond and that the courts will not take jurisdiction over my estate further than the probate of my will." By reference to other items of the will it is disclosed that at least two of the hospital trustees, Ewing and Settegast, were intimate friends of the testator.

The will was dated July 12, 1910. According to averments of the bill, which of course appellees admit to be true for the purposes of this appeal, Hermann died in 1914 leaving an estate at that time worth $2,500,000, but which has since increased in value, owing in large part, it is suggested, to the discovery of oil, to $10,000,000. Block 152 and the adjoining lots in Hathaway's

addition, which it was alleged comprised the only site for a hospital authorized by the will, are just across the street from block 146 or Hermann Square, and in the downtown section of the city where the classes for whose benefit the hospital trust was created congregate, work, and live.

The hospital trustees, the bill proceeds to allege, in violation of their trust, did not erect a hospital on this site, but sold lot 1 in Hathaway's addition and that part of block 152 owned by the testator to the city. In 1926 they built a hospital which cost a million dollars, and located it in a fashionable suburb far removed from and inaccessible to the indigent, sick, and infirm. They are not maintaining the hospital for the exclusive benefit of the indigent, sick, and infirm, but limit charity patients to such of them as are temporarily sick or are suffering from personal injury. They admit pay patients and have set aside space for offices and a library, for operating rooms for a select list of surgeons, and for a training school for nurses. They have appointed one of the trustees general manager of the hospital and are paying him a fixed salary. In his early life Hermann was poor and suffered many hardships. After he became wealthy he still lived among and associated with the poor. "Aside from a few men whom he had known in the early days when they were all poor together [he] had no friends among the wealthy class; that he had a contempt for the rich and prosperous and had no desire to benefit such class."

It was alleged against the city of Houston that it had violated the trust under which it accepted and received the several hundred acres of land for use as a public park, and to be known as "George Hermann Park," in that it had reserved about five acres of the park for the use of the Hermann hospital. Complaint was also made that the city permits the park to be called "Hermann Park," and had laid out in it a golf course which is maintained, not at public expense, but by fees collected from those only who play golf on it.

Appellants contend that the devises and bequests to the hospital trustees were upon conditions subsequent, that these conditions were breached by the alleged violations of trust above mentioned, and that the property so devised and bequeathed reverted, under the provisions of the tenth paragraph of the will, to the testator's heirs living in Switzerland.

The devises to the trustees for the establishment of a hospital and to the city of Houston for the establishment of a public park were valid charitable gifts. 5 R. C. L. 334, 339. And so the legal title to the property involved vested. The language of the devise to the hospital trustees was appropriate to carry the fee simple. Bell County v. Alexander, 22 Tex. 351, 73 Am. Dec. 268. But it is not doubted that the title of the trustees is held in trust; and, of course, a gift in trust may be also upon condition. Green v. Old People's Home, 269 Ill. 134, 109 N. E. 701. The character of the estate devised to the hospital trustees is to be ascertained by determining the true intent of the testator as revealed by his will considered as a whole and construed in the light of the attending circumstances; but the intention of the donor to create a condition subsequent must be clear, and in case of reasonable doubt the vested estate will not be divested. Stanley v. Colt, 5 Wall. 119, 18 L. Ed. 502; Ryan v. Porter, 61 Tex. 106. Where the estate devised is a fee-simple estate in trust and not upon condition, the remedy for an abuse of the trust or mismanagement of the estate is by bill or information brought by the attorney general or other persons having the right to sue. In such a case, the heirs of the donor as such have no interest to protect, and therefore are not entitled to complain. Sanderson v. White, 18 Pick. (Mass.) 328, 29 Am. Dec. 591; Associate Alumni v. Theological Seminary, 163 N. Y. 417, 57 N. E. 626; Perry on Trusts, § 744. The language above quoted from the tenth paragraph of the will contains no express condition subsequent. Nor does it in our opinion imply a condition subsequent. The intention of the testator by the use of that language appears to us to have been to give the property set aside for the establishment and maintenance of a hospital to his heirs in Switzerland only in the event it should be found to be legally impossible to carry into effect his intended gift to charity. The words "fail" and "lapse," which are used in connection with the trust and the devise, are synonymous, and have reference to the failure of the devise to charity to take effect. See 4 Words and Phrases, Third Series, p. 749, and cases cited under heading "Lapsed Legacy."

The testator disclosed his intention that his heirs should take the property that "would have gone" to the hospital trustees but for such failure and lapse; he did not express it as his intention that property which had once vested in the trustees should ever be divested and given to his heirs. It is true that the tenth paragraph also provides that his property should go to his heirs if the

trustees should fail to establish, maintain, and operate the hospital, or if from any cause the property devised to them should not actually be used for the purpose of maintaining and operating the hospital; and it is said that whether these contingencies would arise could not be determined until after the vesting of the estate. But the provisions relating to the future establishment and maintenance of the hospital are so closely connected with other provisions having to do with the failure or lapse of the trust that in our opinion they are to be considered as contemplating the legal impossibility of carrying out the testator's intention to establish a hospital, rather than as suggesting that the trustees would voluntarily refuse to establish and maintain a hospital. It is not fairly inferable from the will, taken as a whole, that the testator had a lack of confidence in the three trustees he selected, or in the associate trustees which they were authorized to select. These trustees were given the broadest discretion in the handling of the hospital trust. They were authorized to use block 152, of which the testator owned all except one lot, and three adjoining lots in Hathaway's addition which they were authorized to purchase, if they considered the price reasonable, as a site for the hospital. It is significant that the trustees were not required or expressly directed to locate the hospital on this site or such part of it as the testator owned. It is hardly to be supposed that the testator intended to forfeit the trust in which he appeared to be so much interested, and which he had created for the establishment and maintenance of a charity hospital, if the trustees in their discretion should locate the hospital on a different site or should spend more than $100,000 for a hospital building. If it had been his intention to so lightly give up a charity for the perpetuation of which he was leaving the bulk of his large estate, it seems that at least he would have said so, and would have used language somewhat similar to that by which he plainly provided in the same paragraph that such part of the park as the city failed to maintain should revert to his estate and be given to the trustees for the benefit of the hospital. The circumstances, that the park property was given to the city on condition and under an express clause of reverter, and that the clause dealing with the gift for the benefit of the hospital contains neither a condition subsequent nor a clause of reverter in favor of the heirs, clearly indicate that it was not the intention of the testator to make the same final disposition of the park as he was making of the property devised to the hospital trustees. A reversion will not be implied for breach of condition subsequent, since in our opinion there was no such condition attached to the gift in trust for the benefit of the hospital, and under the will the heirs were not entitled to take except upon failure of the hospital trust to take effect. The trustees have built and are operating a hospital, and so there is no question here of the right of appellants to take as heirs upon a termination of the trust. In the view we have taken of the right of the hospital trustees to continue to administer the hospital trust, it becomes unnecessary to consider whether the city of Houston has forfeited any part of the park property, because such forfeiture would inure to the benefit not of appellants but of the trustees. The averments of the bill as to the management of the hospital, and the failure to give preference to the indigent, sick, and infirm, need not be considered here, as they have no bearing on the disposition of this case. Any abuse of the trust that exists can be corrected in an appropriate proceeding to the end that the hospital shall be managed in compliance with the will of the testator.

The decree is affirmed.