204 

WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustee under a Deed of Trust, dated December 27th, 1923,

*vs.*

WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Executor of the Last Will and Testament of MARY A. B. DUPONT LAIRD, deceased, Mary Laird Downs, Alletta Laird Downs, William Winder Laird, Jr., Rosa Packard Laird, Wilhelmina Wemyss Laird, and Walter J. Laird and Philip D. Laird, Surviving Executors of the Last Will and Testament of WILLIAM WINDER LAIRD, deceased.

*New Castle, Oct. 16, 1940.*

*Charles F. Richards,* for complainant.

*Robert H. Richards,* for Mary Laird Downs and others.

*Caleb S. Layton,* for Wilmington Trust Co., executor.

*Aaron Finger,* for Walter J. Laird and another.

THE CHANCELLOR: This is a bill to construe a trust deed, executed by William Winder Laird during his lifetime, and in which he created what is known as a "Funded Life Insurance Trust," in the event of his death before December 27th, 1933. He died before that date, and on his death the policies of insurance referred to in that deed were collected by the Wilmington Trust Company, the trustee therein named, and the proceeds thereof are still held by that corporation in that capacity. That fund composes the corpus of the "primary trust fund" mentioned in the trust deed, and the proper disposition thereof by the trustee is the question to be determined.

The important provisions of the deed to be considered are contained in the "Third" and "Fourteenth" paragraphs,

in both of which William Winder Laird is referred to as the "Trustor." These paragraphs are as follows:

"Third: Should trustor die on or before the twenty-seventh day of December, A. D., nineteen hundred and thirty-three, trustee shall prepare and present proofs of death to each of the companies issuing the life insurance policies hereinbefore mentioned, and shall collect the principal amounts of such policies, which are hereinbefore designated, in such event, as constituting the Primary Trust Fund, and after deducting any expenses incident to the collection thereof including a commission not to exceed one-fourth of one per centum (¼ of 1%) of the aggregate of the amounts so collected, shall pay over, absolutely and free and discharged from any trusts herein created, such portion, or the whole of the principal or corpus of the said Primary Trust Fund unto Mary A. B. duPoint Laird, wife of trustor, as she may request in writing, either on one or several occasions, and the receipt or receipts given to trustee for such payment or payments from the principal of the Primary Trust Fund shall fully discharge it from the trusts herein created, with respect to that portion of the principal which is represented by such payment or payments. Should the said Mary A. B. duPont Laird, wife of trustor, elect not to receive the whole of the principal or corpus of the said Primary Trust Fund, then upon her indication in writing thereof, to hold In Further Trust the principal or corpus of the said Primary Trust Fund, or such portion or portions thereof as may not have been paid to her, as hereinbefore provided, to invest and keep the same invested, to collect the dividends, income, interest and profits arising therefrom, to collect the principal thereof as it may become due, and from said dividends, income and interest, pay all taxes, governmental charges and all expenses incident to the management thereof and, after deducting a commission at the rate of three per cent. (3%) per annum of the aggregate of the said dividends, income and interest as compensation for its services, to pay over the net proceeds of the said dividends, income and interest, in equal quarterly installments unto Mary A. B. duPont Laird, for and during the term of her natural life, or until, as hereinbefore provided, she shall have requested the payment of the whole of the principal thereof. Should the said Mary A. B. duPont Laird be dead at the time of the trustor's death then, In Further Trust, to divide the net proceeds of the said Primary Trust Fund into as many equal parts or shares as there shall be children of Mary A. B. duPont Laird, wife of trustor, and trustor then living, and children then dead represented by lawful issue then living, and trustee is directed to assign, transfer and pay over, absolutely and free and discharged from any trusts herein created, one of said equal parts or shares unto the lawful issue of any deceased child or children of the said Mary A. B. duPont Laird and trustor, such issue to take by right of representation the share or shares which his, her or their parent or parents would have taken if then living, and trustee is further directed to add one of the remaining shares of the principal

of the Primary Trust Fund to each share of the principal of the Secondary Trust Fund hereinbefore provided to be set apart for the benefit of each surviving child of Mary A. B. duPont Laird and trustor, subject to all of the terms and conditions and with all the powers and authority on behalf of trustee as is in each of the said trusts created for such surviving children in Article Second hereof, contained."

"Fourteenth: In case of a lapse of beneficiary or beneficiaries in any trust herein created, trustee shall assign, transfer and pay over absolutely, and free and discharged from any trusts whatsoever, the principal or corpus of the trust for which the beneficiary has lapsed, to the person or persons who would be entitled thereto under the intestate laws of the State of Delaware had trustor died possessed thereof in his own right."

The first part of the third paragraph of the deed, executed by William Winder Laird, contains two material provisions:

(1) If Mr. Laird should die on or before December 27th, 1933, the trustee is directed to collect the principal amounts of the various life insurance policies therein referred to, and thereupon "shall pay over absolutely and free and discharged from any trusts," created by the trust agreement, such portion or the whole of the net amount of the "primary trust fund" to Mary A. B. duPont Laird, wife of the said William Winder Laird, as she "may request in writing, either on one or several occasions."

(2) If the said Mary A. B. duPont Laird should "elect not to receive the whole of the principal or corpus of the said primary trust fund, then upon her indication, in writing, thereof," the trustee is directed to hold such principal or corpus, or any portion thereof, not previously paid to Mrs. Laird, as above provided, "in further trust * * * to invest and keep the same invested," and to collect the income therefrom, and after making certain deductions to pay the net income in equal quarterly installments to Mrs. Laird "for and during the term of her natural life," or until, as above provided, "she shall have requested the payment of the whole of the principal thereof."

The remainder of the "Third" paragraph of the deed provides that in case the said Mary A. B. duPont Laird should not be living at the time of her husband's death (meaning his death prior to December 27th, 1933), the trustee should "divide the net proceeds of the said primary trust fund into as many equal parts or shares as there shall be children" of the said William Winder Laird and the said Mary A. B. duPont Laird, his wife, "then living and children then dead represented by lawful issue then living." That part of the deed further provided that the share of each child then dead, represented by issue, should be paid over immediately to such issue. The share of each child then living was, however, to be held in further trust by the trustee, and added to similar trust funds created out of what is designated in the trust deed as the "Secondary Trust Fund."

Based on the provisions of the "Third" and "Fourteenth" paragraphs of the deed, and on certain facts hereinafter stated, the bill suggests four possible dispositions of the principal of the primary trust fund:

(1) That the fund in question is held in trust for the benefit of the issue of the said Mary A. B. duPont Laird, wife of the said William Winder Laird, under the same terms and conditions as are provided for in the "Third" paragraph, in the event that Mrs. Laird should predecease her husband.

(2) That the said fund should be distributed among the person or persons who would have been entitled thereto under the intestate laws of the State of Delaware had William Winder Laird died possessed thereof in his own right, in accordance with the provisions of the "Fourteenth" paragraph of the deed.

(3) That the said fund should be paid over to the surviving executors of the estate of William Winder Laird, deceased.

(4) That the said fund should be paid over to the executor of Mary A. B. duPont Laird because she took a vested interest therein under the terms and provisions of the deed.

I have already pointed out that William Winder Laird died before December 27th, 1933. Mrs. Laird, however, survived him more than ten years, and died August 27th, 1938.

The latter part of the "Third" paragraph of the deed, on which the first question is based, therefore, does not govern the disposition of the "primary trust fund."

Nor can the fourth contention, which is made on behalf of the Wilmington Trust Company, as executor of Mary A. B. duPont Laird, deceased, be sustained.

It is conceded that no part of the corpus of the "primary trust fund," which consisted of the proceeds from the insurance policies issued on the life of William Winder Laird, was ever paid to Mary A. B. duPont Laird, his wife, by the Wilmington Trust Company, the trustee named in the deed.

Under the provisions of the first part of the "Third" paragraph of that instrument, she had the undoubted right to demand, in writing, that that fund be paid to her by the trustee, clear of any trusts, whatsoever. Mrs. Laird not only failed to exercise that right, but, by her acts, clearly indicated an intent that the fund should remain in trust during her life, and that only the income thereon be paid to her, in accordance with other provisions of the same paragraph of the deed. She did not expressly notify the trustee, in writing, of her election to that effect, and, therefore, did not specifically comply with the provisions of the deed; but she permitted the fund to remain in the hands of the trustee during the whole of her life, after the death of her husband, and that corporation invested and reinvested it from time to time, and she received the income thereon. On various

occasions Mrs. Laird signed and delivered receipts to the trustee, acknowledging such payments of income, and on other occasions such income payments were deposited to her credit in the banking department of the Wilmington Trust Company. Moreover, by a letter dated February 2nd, 1928, that corporation specifically notified Mrs. Laird that it had invested the fund in question in accordance with her desires and was then receiving income therefrom. In these circumstances, it is difficult to escape the conclusion that there has been such a substantial compliance by Mrs. Laird with the terms of the second provision of the first part of the "Third" paragraph of the deed as to indicate that she elected to have the fund remain in trust, and merely to receive the income during her life. That being true, she acquired no title to that fund and could pass none to her executor.

It has been contended that the relation of principal and agent existed between Mrs. Laird and the Wilmington Trust Company at the time of her death, but I see nothing to justify that contention. In the absence of anything in the deed to show a contrary intent, a gift of the income on a fund might perhaps operate as a gift of that fund (See *Thompson on the Construction of Wills*, § 326; *Lorton v. Woodward*, 5 Del. Ch. 505; *Sussex Trust Co. v. Beebe Hospital of Sussex County, ante p.* 172, 15 A. 2d 246) ; and this is true though it is held in trust, *id.* But in view of the various provisions of the deed, (paragraphs "Third" and "Fourteenth"), that principle does not apply to this case.

The "Third" paragraph of the deed does not provide for a disposition of the "primary trust fund" in the event of the death of William Winder Laird before December 27th, 1933, and in case Mrs. Laird should survive him and should elect merely to be paid the income thereon during her lifetime, and not the principal thereof.

The remaining questions to be considered, therefore, are whether the "Fourteenth" paragraph of the deed abso-

lutely disposes of Mr. Laird's interest in that fund, or whether there was a resulting trust in favor of his estate, which requires the payment thereof to his executors.

That paragraph provides:

"In case of a lapse of beneficiary or beneficiaries in any trust herein created," the trustee shall pay the corpus to "the person or persons who would be entitled thereto under the intestate laws of the State of Delaware had trustor (meaning William Winder Laird) died possessed thereof in his own right."

The meaning of the word "lapse" is, therefore, the material question to be considered in disposing of the second and third contentions. That word frequently means "the termination or failure of a right or privilege through neglect to exercise it within some limit of time, or through failure of some contingency." *Web. New Inter. Dict.* (2d *Ed.*). "To fall or pass from one proprietor to another, or from the original destination by the omission, negligence or failure of some one, as a patron, a legatee," etc. *Web. New Inter. Dict.* (2d *Ed.*).; *Cent. Dict.* "To become ineffectual or void." *Cent. Dict.*

In the nomenclature of the law, the word "lapse" is perhaps more often used in connection with a legacy or a devise, than otherwise. But it is not necessarily confined to that use. When used in connection with a testamentary disposition, it is apparent that it ordinarily means "fail" or "failure"; so that when used as a verb the words "lapse" and "fail" are practically synonymous, and when used as a noun they mean the same as "failure." *Mozley & Whitleys Law Dict.,* (5th *Ed.*) ; 36 *C. J.* 720; *Gredig v. Sterling, et al.,* (5 *Cir.*) 47 *F.* 2d 832; *Winsor v. Brown,* 48 *R. I.* 200, 136 *A.* 434. "Thus a legacy is said to lapse which fails to vest." *Web. New Inter. Dict.,* (2d *Ed.*).

In *Gredig v. Sterling, et al., supra,* [47 *F.* 2d 834] both the words "fail" and "lapse" were used in connection with certain devises in trust for charitable purposes. The Circuit Court of Appeals said:

"The words 'fail' and 'lapse,' which are used in connection with the trust and the devise, are synonymous, and have reference to the failure of the devise to charity to take effect."

The word "lapse" is used in the "Fourteenth" paragraph of the deed, with reference to the object of Mr. Laird's bounty and not its subject, but the same general principles apply. No clear intent of the creator of the trust to retain any interest in the fund is apparent. On the contrary, that paragraph of the deed is worded in general language and seems to be intended to take care of all possible interests that are not disposed of by any other provisions. Perhaps other and clearer language might have been used to express the intent of Mr. Laird, but it appears from the agreed facts that the deed executed by him was not drawn by a lawyer. Because of the failure of Mrs. Laird to elect to accept an absolute gift of the corpus of the "Primary Trust Fund," the disposition of that fund is therefore governed by the "Fourteenth" paragraph of the deed. The fund in question must therefore be paid by the trustees to Mary Laird Downs, Alletta Laird Downs, William Winder Laird, Jr., Rosa Packard Laird and Wilhelmina Wemyss Laird who would have been the heirs at law of William Winder Laird under the laws of the State of Delaware had he died intestate, possessed of that fund in his own right.

A decree will be entered in accordance with this opinion.