

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

Gerald C. Mann
XXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Hon. Weaver H. Baker, Chairman
State Board of Control
Austin, Texas

Opinion No. O-5625
Re: Does the State Board of
Control, by virtue of H.B.
1188, Acts of the Regular
Session of the 45th. Legisla-
ture, 1937 (Article 3211a,
V.A.C.S.), have authority to
sell and convey the real and
personal property donated to
the State of Texas by the
Dickson Colored Orphanage,
Inc., and related questions.

Dear Sir:

In your letter of September 21, 1943, you requested
our opinion upon certain facts, which may be summarized as
follows:

Dickson Colored Orphanage, Inc., conveyed certain
property near Gilmer, Texas, to W. H. Francis, Trustee, by deed
dated August 9, 1929, which deed was made upon the following
trust and conditions, towit:

"If the State of Texas, through its proper adminis-
trative channels, shall accept the said properties for the
establishment and maintenance of an orphan asylum for col-
ored children as aforesaid, then and in that event the
said W. H. Francis, Trustee, the grantee herein, shall and
is hereby empowered and directed to deliver the said prop-
erties, unto the State of Texas, and to execute and deliver
unto the State of Texas his deed and conveyance thereof,
conveying the above described premises and properties unto
the State of Texas for the purposes herein specified, free
from all debts, liens and encumbrances of any character
whatsoever, in which event the grantor herein binds itself
to pay off and satisfy all debts, liens or encumbrances of
every character existing against said property, and the
deed of conveyance by the said W. H. Francis, Trustee,
shall vest in the State of Texas an unencumbered fee simple
title to said property."

Such donation was conditionally accepted by S.C.R. No.
25, Acts of the Regular Session of the 41st Legislature, 1929,
and finally accepted by H. B. No. 11, Acts of the 3rd Called
Session of the 41st Legislature, 1929.

W. H. Francis, Trustee, conveyed the property belonging to the Dickson Colored Orphanage, Inc. to the State of Texas by deed dated August 26 1930.

House Bill No. 11, Acts of the 3rd Called Session of the 41st Legislature, 1929, and House Bill No. 1188, Acts of the Regular Session of the 45th Legislature, 1937, authorize the State Board of Control to move any and all orphan negro children from the Dickson Colored Orphanage near Gilmer, Texas, to the Deaf, Dumb, and Blind Asylum for Colored Youths and Colored Orphans at Austin, Texas, whenever such Board deems it advisable to do so. All such children have been moved to the Asylum at Austin, because of the decreased attendance at both institutions, and the fact that the Asylum at Austin has better facilities for the care, support and maintenance of such children than the institution near Gilmer.

Both House Bill No. 11 and House Bill No. 1188, supra, authorize and direct the State Board of Control to sell the Dickson Colored Orphanage property for the best price obtainable, after the removal of all the negro children therefrom, and to convey the same by deed and bill of sale duly executed by the members of the Board of Control. Such Acts further provide that "the proceeds from the sale of said property when collected shall be used by the said Board of Control for the purchase of additional land, the erection of additional buildings, or the support and maintenance for the said Deaf, Dumb and Blind Asylum for Colored Youths and Colored Orphans at Austin, Texas, as said Board may determine to be for the best interest of said institution."

You request our opinion upon the following questions:

"(1) Assuming the title was good and merchantable in the Dickson Colored Orphanage on February 9, 1929, when the aforesaid deed to W. H. Francis, Trustee, was executed, does the deed from the said W. H. Francis, Trustee, to the State of Texas, dated August 26, 1930, and recorded as aforesaid, pass the fee simple title to the lands and premises conveyed, or purportedly conveyed, by the last mentioned deed?

"(2) Does the State Board of Control, by virtue of the authority given it, in Section 3 of Article 3221 (a) of the Revised Civil Statutes of Texas have authority to convey upon the terms and conditions prescribed by said law unto a purchaser all the interest owned by the State of Texas?

"(3) Assuming the answer to the last question is in the affirmative, does the State Board of Control have the legal right, when the proceeds of such sale is collected,

to purchase additional lands, erect additional buildings, or use such purchase money for the support and maintenance of the Texas Deaf, Dumb and Blind Institute for Colored Youths here in Austin, Texas?"

The abstracts of title to all of this property were examined and approved by the Honorable Robert Lee Bobbitt, Attorney General of Texas, on August 28, 1930, and the deed from W. H. Francis, Trustee, to the State of Texas was prepared and approved by him. We therefore assume that by your first question you only want our opinion upon the legal effect of the recitations and conditions in the deed from Dickson Colored Orphanage, Inc. to W. H. Francis, Trustee, and in such Trustee's deed to the State of Texas.

The deed from Dickson Colored Orphanage to W. H. Francis, Trustee, dated February 9, 1929, recites that the directors of such institution have tendered unto the State of Texas all the properties owned by it, subject to acceptance by the State of Texas, "for the establishment and maintenance of an orphan asylum for colored children, said properties to be donated to the State of Texas for such purpose." The consideration was recited to be "$10.00 cash in hand paid", the receipt of which was acknowledged. The deed was made upon the trust and conditions set out above.

The deed from W. H. Francis, Trustee, to the State of Texas, dated August 26, 1930, recites the execution of the deed from Dickson Colored Orphanage to such Trustee, and the terms and conditions thereof. Such last mentioned deed conveys the property; covenants to warrant and defend the same, and is in the form of a warranty deed conveying an absolute fee simple title, unless the statement "for the establishment and maintenance of an orphan asylum for colored children" is a restriction on the estate conveyed.

Does the statement in the deed, "for the establishment and maintenance of an orphan asylum for colored children", constitute such a condition as, if breached, would terminate, or give to Dickson Colored Orphanage, Inc. the right to divest the State of Texas' title to the property conveyed?

"A condition may be distinguished from a conditional limitation by the results which follow upon a breach of the condition. The distinction, although nice and technical, is yet familiar law. If the tenancy is upon condition, and there is a breach, the estate does not determine unless there is a re-entry by the grantor. But, in the case of a conditional limitation, the estate determines upon the happening of the contingency." 12 Tex.Jur. 125.

"The language used must be sufficient to give rise to a condition either by express terms or by implication, as evidencing the intention of the parties, and must import a condition ex proprio vigore.  It appears that such language must be used in the conveyance itself, which, in the case of a condition subsequent, must provide to the effect that a breach shall operate to destroy the estate and re-invest it in the grantor, parol evidence to establish a condition being inadmissible. . . . Where the language or intention is doubtful, the promise will be construed as a covenant, especially in the absence of any provision reserving title to the grantor or stipulating for a reversion of the estate in the event the contract be broken by the grantee. . . ." 12 Tex. Jur. Sec. 86, pp. 131 et seq.

"The question may arise as to whether a particular agreement or promise in a deed is a covenant or a condition. Courts are inclined to construe the provision as a covenant rather than as a condition in any case in which such a construction may be imposed, since forfeitures are not favored. . . . The rule of strict construction is frequently applied in determining whether the intention is sufficiently expressed or implied to give rise to a defeasible estate, bearing in mind the rule of construction against the condition and in favor of an indefeasible estate.  The provision will not be construed as a condition unless it is plainly designated or clearly inferable from the language used that such is the proper construction. . . ." 12 Tex.Jur. Sec. 85, p. 129 et seq.

In Olcott v. Gabert, 23 S.W. 985, where a railroad company had conveyed certain lots to a bishop "for the benefit of the Roman Catholic Church", the court, holding that the deed did not contain a condition subsequent, said:

"We are of the opinion that the grantee took under the deed of a fee-simple title in trust for the benefit of the church, whose officer he was.  There are no conditions subsequent expressed, and, although they may be implied, they are not favored by law.  It may be that the consideration expressed should be deemed nominal, and that the conveyance should be treated as voluntary, and it is true that a condition will be more readily implied in a deed of that character than in one which rests upon a valuable consideration.  Yet the rule is well recognized that the mere declaration of the uses to which the granted premises are to be applied do not ordinarily import a condition.  Where the declared purpose for which the property shall be used is a matter that will inure to the special benefit of the grantor, the courts are more inclined to treat the conveyance as conditional, than

when, as in this case, the use is for the benefit of a special class of persons, or of the public at large.  In this case it does not appear that the maintenance of a church upon the lots was a matter specially advantageous to the railroad company who made the grant."

In Tarrant County v. McLemore, 8 S.W. 94, the deed involved was "to William Quayle, chief justice of said county of Tarrant . . . for the purpose of building a county jail thereon for said county of Tarrant."  Tarrant County went into immediate possession of the property and built a jail thereon, and continuously used the same as a county jail until it built another jail, when it abondoned the former jail for jail purposes, but continued the use and possession of the lots in question.

In reversing a judgment against the plaintiff, Tarrant County, which sued to quiet its title, the court said:

"There is no condition annexed to the grant by which a forfeiture would be made to occur, nor would it be implied from the fact that the conveyance was for a jail, or for purposes of a jail.  The terms of the deed are such as will, unless qualified by a cause of defeasance, convey a fee-simple estate.  They vest the title in the county forever.  The deed is not a mere dedication for public uses; it is a deed to the county.  A condition subsequent that would work a forfeiture of the estate must be certain and clearly expressed.  It must appear to be the manifest intention of the grantor by some provision in the instrument distinctly imposed."

In Hughes v. Gladewater C. Line Independent S. Dist., 76 S.W.(2) 471, the court said:

"It is definitely settled in this state that where a deed contains apt language denoting the grant of an unconditional fee estate in land, other language contained in the instrument which merely denotes that the grant was made for a particular purpose is not regarded as implying that the grant is conditional.  Texas & P. Railway Co. v. Martin (Tex.Com.App.) 71 S.W. (2d) 867, and authorities there cited.  The same rule applies in construing a given provision for the purpose of ascertaining if it limits the duration of the grant.  It is quite clear, therefore, that neither of the following clauses of the deed here under consideration imports either a condition subsequent or a limitation respecting the duration of the grant, namely, the granting clause which in terms denotes a grant "for school purposes only for the colored children of the County

of Gregg', etc.; and the clause reading, 'it is understood that the land is deeded to the trustees for school purposes only for the colored children of District No. 3 of Gregg County, Texas.'"

The statement itself does not say that it is a condition, or that the property itself is to be used as a place "for the establishment and maintenance of an orphan asylum for colored children", or that if it is not so used the grantor shall have the right to re-enter and forfeit the title of the State of Texas.  There are no characteristic words of special limitation, such as "while", "so long as", or "until"; nor characteristic words of conditions, such as "on condition", "provided" or "so that", contained in the statement.  The absence of such technical words is not fatal to the creation of a condition but deserves consideration in ascertaining the grantor's intention.

We do not believe that this statement in the deed constitutes either a special limitation or a condition subsequent. This opinion is strengthened by the condition and circumstances surrounding the parties at the time of the execution of the deed.

The Dickson Colored Orphanage was incorporated May 14, 1900.  Some time after such date the property in question was acquired, and an orphanage for colored children was established and maintained thereon.  Twentynine years after it was incorporated, its directors tender all of its property unto the State of Texas for the establishment and maintenance of an orphan asylum for colored children.  S.C.R. No. 25, supra, provides for a conditional acceptance of the donation, as follows:

"BE IT FURTHER RESOLVED that the president of the Senate is hereby authorized to appoint two members of the Senate and the Speaker of the House be authorized to appoint three members of the House, as a committee to investigate the advisability of accepting this property and to report to the First Called Session of the 41st. Legislature and their expenses be paid out of the Contingent Expense Fund of the House and Senate and further this property be not accepted until after the Committee reports advising same."

House Bill No. 11, supra, accepted the donation, and directed W. H. Francis, Trustee, "to execute and deliver the proper deed conveying said land and premises unto the State of Texas for the purpose herein specified, free from all debts, liens, or encumbrances of any character whatsoever. . . ." (Underscoring ours).  Quotation is from Section 5 of the Bill.

It is interesting to note that prior to the passage of House Bill No. 11, supra, there appears to have been no

State Asylum for colored orphans.   Section 1 of H.B. No. 11 changed the name of the Deaf, Dumb and Blind Asylum for Colored Youths to the Deaf, Dumb and Blind Asylum for Colored Youths and Colored Orphans.   Section 2 authorized the State Board of Control to accept and care for, support and maintain orphan negro children in such Asylum located at Austin, Texas.   It also authorized the Board to move any and all orphan negro children from the Dickson Colored Orphanage located near Gilmer, Texas, to Austin and place them in said Asylum whenever they deem it advisable to do so.   Section 3 makes an appropriation to pay the expenses of caring for and transporting said negro children to Austin.   Section 6 provides that the money therein appropriated shall not be available until the property in question shall have been conveyed "in fee simple . . . to the State of Texas."   Section 7 authorizes and directs the State Board of Control to sell the property donated by the Dickson Colored Orphanage, "as soon as all the negro children are removed from said Dickson Colored Orphanage by the Board of Control."

House Bill No. 11, supra, became effective twenty (20) days after adjournment.   The Third Called Session of the 41st Legislature adjourned July 20, 1929.   It is reasonable to assume that the Dickson Colored Orphanage, Inc. and W. H. Francis, Trustee, had knowledge of the terms and conditions of the Acts of the Legislature accepting this donation.   The final Act provided for the removal of the orphan children from Gilmer to Austin, and the sale of the donated property.   The deed from Dickson Colored Orphanage to W. H. Francis, Trustee, was made twenty days after the acceptance of the donation by the Legislature, and the deed from the Trustee to the State of Texas was made over one year after the effective date of the final Act of acceptance.

In our opinion these facts are conclusive and indicate an intention on the part of the Dickson Colored Orphanage, Inc. and W. H. Francis, Trustee, that the property was to be used for the benefit of the State in establishing and maintaining an orphanage for colored children, and not that these activities must be performed on the land itself.   (Paraphrased from Boone Biblical College v Forrest, 275 N.W. 132, 116 A.L.R. 77).

A more serious question is:   Does the statement in the deed create a trust upon the property, and make the State of Texas the trustee?   We think that it does.

In Ryan v. Porter, 61 Tex. 106, the deed under consideration contained the following provision:   "In trust that they may erect on the said lot a dwelling-house and fixtures for the use and occupancy of the married itinerant preaches of the Methodist Episcopal Church South, who may from time to time be stationed on the Nashville Circuit or that circuit or station

which shall include said premises."

The Court said:

"There is no condition subsequent expressed in the deed from Chiles to the trustees, etc.; nor does the grantor therein use any of the apt words or forms of expression that are considered in law as implying a condition subsequent; and there is no clause of nullity, or any declaration to the effect that the deed is to be considered void for the failure of the trustees or others to do, or not to do, any particular act.

"The declared object is, that the property is to be used for a specific purpose; by the grant Chiles intended to accomplish that particular purpose.  Those upon whom the benefit was intended to be conferred, as a class, are worthy of his generosity.

"It is here claimed that, as the grantor directed the property to be used in a particular way, and for the purpose named, and impliedly it was to be used for no other purpose or in any other mode than that specified, therefore a condition subsequent must be implied, to the effect, should the property ever cease to be used for the purpose mentioned, that it would then revert to the grantor or his representatives.  Certain authorities are cited as sustaining that proposition.

"In each of the several cases cited in the brief and argument of the distinguished counsel for appellants as supporting the proposition, an examination will attest that the conditions are expressed in the instrument.

"From these settled principles the deed of Chiles cannot be construed as a grant upon conditions subsequent, a failure to comply with which would work a forfeiture of the land.

"From an examination of the entire instrument, we think it apparent that Chiles intended thereby to divest himself of the title to the property unconditionally, and vest the fee in the trustees for the benefit of the Methodist church, limiting its use to the occupancy of the itenerant Methodist preachers appointed to that circuit. These limitations, instead of being implied conditions subsequent, are directions in fact to the trustee as to the management of the property.  Neither the grantor nor his heirs are to receive any special benefit from a proper execution of the trust. . .  While Chiles, by the terms of

his deed, limits, at least impliedly, the use of the property, there is nothing contained in the instrument that indicates any intention on his part, regardless of changes that might take place in the town or community, or in the locality of the property and its surroundings, as well as the conveniences and necessitiesof the church and ministers in charge that the property must forever be used in that way. Undoubtedly his intention was to secure a comfortable home to the ministers assigned to that circuit while they were there stationed. That being the intention as far as expressed, whenever, upon proper application, it is made to appear that the particular property is no longer available for that purpose, a court of equity would direct its sale and the investment of the proceeds so as to secure the object intended to be accomplished by the grantor.

"The grantor or his heirs would, perhaps, have such interest in the matter that they might, by suit in equity, compel a proper execution of the trust. And undoubtedly if the changed condition of the town, or the proper location of the church, etc. should render the land unfitted for the purposes intended, the trustees might apply to the equitable powers of the court, and upon a proper showing authority would be granted to sell the same and invest the proceeds for the purposes intended by the deed."

In Long v. Moore, 48 S.W. 43 (writ denied), the Court said:

"The right of appellants to recover the property will depend upon the proper construction of the deed of John Long to the school trustees. It is claimed that, as the deed declared that the property was to be used for school purposes, on its ceasing to be used for such purposes it reverted to the appellants, as the heirs of John Long, or, rather, that a resulting trust then arose in their favor.

"It will be observed that the deed of John Long to the trustees for the Crocket School contains no limitations, in terms' whatever. There is a mere declaration of the purpose for which the land was conveyed, which was 'for the purpose of a female academy,' without the use of any other words of limitation, as 'only', or "for no other purpose whatever.'

"The use for which the property was conveyed was for the benefit of the community at large, and there was no contemplation of its discontinuance, as a school might be maintained on the land as long as there were people in the community. . . The deed was shown to be an absolute warranty deed, with the mere declaration in the habendum clause

that the property was for the purpose of a female academy; and it should be construed as a conveyance of a fee-simple title to the trustees named therein, for the benefit of the association."

In identical language, both House Bill No. 11, supra, and House Bill No. 1188, supra, made provision for the distribution of the proceeds from the sale of the Gilmer property as follows:

". . . The proceeds from the sale of said property when collected shall be used by the said Board of Control for the purchase of additional land, the erection of additional buildings, or the support and maintenance for the said Deaf, Dumb and Blind Asylum for Colored Youths and Colored Orphans at Austin, Texas, as said Board may determine to be for the best interest of said institution."

In view of the fact that a colored orphanage was "established" by House Bill No. 11, supra, at Austin, Texas, and provision was made for the removal of the colored children from Gilmer to Austin, and the proceeds from the sale of the Gilmer property were directed "to be used by the said Board of Control for the purchase of additional land, the erection of additional buildings, or the support and maintenance for the Austin institution, we are convinced that both the directors of the Dickson Colored Orphanage and the Legislature of the State of Texas intended that a trust be created upon the donated property; that such property be sold, and the proceeds used for the benefit of the Austin Asylum.

We therefore answer your questions as follows:

(1)   Fee simple title passed to the State of Texas by the deed from W. H. Francis, Trustee, subjedt to the trust above mentioned.

(2)   That the Board of Control has the authority to convey a fee simple absolute title to this property.

(3)  ,That the proceeds from the sale of such property, when collected  should be placed in a special account with the State Treasurer, subject only to future appropriation by the Legislature for the benefit of the Deaf, Dumb and Blind Asylum for Colored Youths and Colored Orphans at Austin, Texas.  You do not have the right to use such proceeds without an appropraation thereof by the Legislature.

Hon. Weaver H. Baker, page 11 (O-5625)

        Trusting the above answers your questions fully, we are

                            Yours very truly

                            ATTORNEY GENERAL OF TEXAS

                            By /s/ Thos. B. Duggan, Jr.
                            Thos. B. Duggan, Jr., Assistant

APPROVED OCT 16, 1943
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:      GPB, CHAIRMAN

TBD:BT:wb

O.K.
C.C.R.